B. R. PEARSON, ADMINISTRATOR OF THE ESTATE OF JO ANN PEARSON, DECEASED, v. NATIONAL MANUFACTURE AND STORES CORPORATION, TRADING AND DOING BUSINESS AS HUNTLEY-STOCKTON-HILL COMPANY, AND CHESTER B. HOWELL.

(Filed 31 May, 1941.)

1. **Negligence §§ 17b, 19a—**

What is negligence is a question of law, and, when the facts are admitted or established, the court may say whether negligence exists and whether it was a proximate cause of the injury.

2. **Negligence § 19b—**

A nonsuit is properly entered on the ground of contributory negligence when contributory negligence is established by plaintiff's own evidence, but where the facts are not admitted or where more than inference may reasonably be drawn from the evidence, the issue must be submitted to the jury.

3. **Automobiles § 18c—Evidence held insufficient to establish contributory negligence as matter of law on part of mother of 2½-year-old child struck on highway.**

The evidence tended to show that intestate, a child 2½ years old, in company with her mother and others, walked down a driveway from a house to the hard-surface highway, that while the mother and others were standing on the shoulders of the road, intestate ran across the road to the opposite shoulder, and that while attempting to recross the road she was struck and fatally injured by the car driven by the individual defendant after it had traveled 200 yards or more of straight, unobstructed highway. The mother testified that she did not see the approaching car until it was too late for her to take any action to avoid the injury. *Held:* The evidence considered in the light most favorable to plaintiff administrator, the father of intestate, is insufficient to show contributory negligence as a matter of law on the part of intestate's mother.

**4. Negligence § 13b——**

In an action to recover for wrongful death of a 2½-year-old child, contributory negligence on the part of its mother is a bar to so much of the recovery as would accrue to her as a beneficiary of the child's estate, but negligence of the child's mother will not be imputed to the child's father, and is no bar to the recovery of the amount which would inure to his benefit as beneficiary of the child's estate. C. S., 160, 137 (6).

APPEAL by plaintiff from *Stevens, J.,* at September Term, 1940, of ALAMANCE.

Civil action for recovery of damages for alleged wrongful death. C. S., 160-161.

Plaintiff alleges: That the death of intestate, Jo Ann Pearson, two and a half years of age, on 9 August, 1939, was solely and proximately caused by the carelessness and negligence of the defendant Howell while operating an automobile on State Highway No. 10 in Alamance County, North Carolina, within the scope of his employment as agent and servant of his corporate defendant (1) in that said automobile was driven "carelessly, recklessly and heedlessly, in wanton and willful disregard of the rights and safety of others, and without due caution and circumspection, and at a speed and in a manner so as to endanger or to be likely to endanger the person of this plaintiff's intestate, as well as other persons who might be upon said highway"; (2) in that defendant Howell "continued to drive said automobile at a highly excessive rate of speed and in a careless and reckless manner, without slowing the same down or bringing it under proper control," and (3) in that "he carelessly and negligently drove said automobile into and against said plaintiff's intestate when" he "had a clear and unobstructed vision of said highway and saw, or should have seen plaintiff's intestate, a small child of tender years, standing on or near the dirt shoulder of said highway."

While defendants, in their respective answers, admit that on 9 August, 1939, defendant Howell was employed by corporate defendant as a salesman in its store located in the city of Burlington, N. C.—his hours of work being from eight o'clock a.m. to five-thirty p.m., they deny that at the time (7:30 p.m.) and place of the fatal injury of intestate, defendant Howell was acting within the scope of his employment. They further deny that defendant Howell was negligent, or that the injury to intestate was caused by any negligence on the part of defendant Howell. As further defense defendants, among other things, aver: (1) That plaintiff, B. R. Pearson, and his wife, as her father and mother, are the sole beneficiaries of the estate of intestate, and as such will take any recovery had in this case; and (2) that they, by their own negligence, contributed to the injury of intestate (a) in that, the intestate, being a child two years of age, and at all times in the actual or constructive care

and custody of her parents, they knew or by the exercise of ordinary care should have known at all times where she was, and (b) in that they permitted her to walk upon said highway unattended, and carelessly and negligently permitted her to run into the side of the automobile operated by defendant Howell, which contributory negligence is pleaded in bar of plaintiff's right to recover in this action.

Evidence for plaintiff, introduced on trial below, tends to show these facts: On 9 August, 1939, a little past 7 o'clock p.m., Jo Ann Pearson, two and one-half years of age, daughter of plaintiff, B. R. Pearson, and his wife, while standing on the dirt shoulder on the south side of State Highway No. 10 at a point in front of and across the highway from the residence of W. J. Pearson, located not quite one-half mile east of the village of Trollingwood in Alamance County, North Carolina, was stricken and fatally injured by an automobile traveling east from the direction of said village, and being operated by defendant Chester B. Howell. From that point west to the store of W. J. Pearson, a distance of 300 yards, the highway, of standard width eighteen or twenty feet, with dirt shoulders on each side, is straight and practically level. To the east the highway is straight for 200 yards or more. There were about eight or ten houses on the north side of the highway and several on the south side between the store and the residence of W. J. Pearson.

The accident is narrated by Mrs. B. R. Pearson, witness for plaintiff, in this manner: "On August 9, 1939, my little girl and I went to the home of W. J. Pearson about five o'clock in the afternoon to visit my sister in law . . . Mrs. W. J. Pearson and I and the two little girls started away from her house on a visit to a neighbor's house. We . . . went down to the highway. When we got to the highway, or as we approached the highway, there was no car in sight or passing. There is a driveway that leads from the house down to the highway. We went down this driveway . . . When we got to the edge of the highway at the bridge, we just stopped momentarily . . . the two children were with us, . . . between us. When I stopped momentarily my little girl stopped too. She was standing there with me and my sister in law and the other little girl. While we were standing there she ran across the road. She went to the other side. She went directly across the highway . . . A moment after she had gone across the highway I looked up and saw the car coming from the direction of Trollingwood. I would say it was about a hundred feet away when I first saw it, right in front of the next house. I don't recall hearing the horn blow. At that time the little girl was on the shoulder of the road, on the other side from me. She went completely to the other side of the road and she looked like she had started back. She did start back. When she indi-cated she had started back and when I noticed the car and saw she

couldn't make it, and I couldn't either, I tried to be calm and told her to stand still. . . . She was still on the shoulder of the road . . . furtherest from me,—on the south side of the paved road. There was no other car approaching other than the car I afterwards learned was driven by Mr. Howell. There was no other car parked along there. I didn't attempt to go to her. I suppose I was shocked. I didn't know what to do.. When I first saw the car there wasn't time for me to have gotten to her before the car reached that point, driven at the rate he was driving. The car didn't slow down any whatsoever. . . . In my opinion, from the time I saw it until it went by me, it was going about sixty miles an hour. The car struck the little girl. She was on the south shoulder of the road when the car struck her . . . When I got to her she was lying on the shoulder, on the dirt . . . She was dead when we got to the hospital with her."

On cross-examination, Mrs. Pearson testified in part: "This highway No. 10 is a much traveled highway. I have been familiar with it ever since it has been hard surface . . . used it on many occasions . . . My little girl was standing beside me . . . I didn't have hold of her hand as I approached the highway. She was walking right beside of me. When I reached the highway I could see on up in front of Pearson's store. . . . The automobile driven by Mr. Howell was coming from that direction. No, I didn't let my little child run across the highway unaccompanied and unattended by anybody. I couldn't prevent it. I usually did hold her hand, but I just happened not to be . . . at that time. I didn't let her run across the highway. She did run across. No, I didn't follow her immediately when I saw her run across. I don't know why. I knew automobiles were apt to come along there at any moment. The reason I didn't go and get my little girl, there wasn't time . . . Yes, I was paying attention to where my little girl was, too. . . . The reason I didn't go immediately across over to her was she had started coming back and the car was coming right at us . . . Immediately after my child crossed the highway, I don't remember whether I looked up the highway to see if an automobile was coming or not. If I had looked, I suppose I could have seen this automobile when it was 300 yards away. I didn't look then. No, I didn't let the little girl stand there on that side of the highway when I could have gone immediately after her, because when she got to the other side of the road, the car was right there at us. Q. 'Then why didn't you go immediately . . . ?' A. 'I don't know why I didn't. It all happened so quick I didn't know what to do.' . . . The front of the automobile then didn't hit her."

There was much other evidence.

After plaintiff had introduced his evidence and rested his case, motion on behalf of both defendants was made for judgment as of nonsuit, under the authority of *Reid v. Coach Co.*, 215 N. C., 469, each taking the position that upon the statement of the mother of intestate, she herself was guilty of contributory negligence.

Judgment as of nonsuit was granted upon the ground on which the motion was made.

Plaintiff appeals to Supreme Court and assigns error.

*Long, Long & Barrett for plaintiff, appellant.*
*Barnie P. Jones and Fuller, Reade, Umstead & Fuller for defendant, appellee.*

WINBORNE, J. Considering the ground upon which judgment as of nonsuit was entered in Superior Court, these questions arise here for decision: (1) When the evidence is taken in the light most favorable to plaintiff, is the mother, who is a beneficiary of the estate of intestate, as a matter of law, guilty of negligence which proximately contributed to the injury and death of intestate? (2) If so, may such contributory negligence be imputed to the father of intestate, who is also a beneficiary of the estate, and bar the prosecution of this action? Both questions are properly answered in the negative.

1. The principle prevails in this State that what is negligence is a question of law, and, when the facts are admitted or established, the court must say whether it does or does not exist. "This rule extends and applies not only to the question of negligent breach of duty, but also to the feature of proximate cause." *Hicks v. Mfg. Co.*, 138 N. C., 319, 50 S. E., 703; *Murray v. R. R.*, 218 N. C., 392, 11 S. E. (2d), 326, and cases cited.

It is proper in negligence cases to sustain a demurrer to the evidence and enter judgment as of nonsuit, "when contributory negligence is established by plaintiff's own evidence." *Smith v. Sink*, 211 N. C., 725, 192 S. E., 108, and cases there cited. See, also, *Murray v. R. R., supra.* But where the facts are not admitted, or where more than one inference may reasonably be drawn from the evidence, the issue must be submitted to the jury. Such is the situation in the present case.

2. In this State, it is provided by statute, C. S., 160, that in an action for wrongful death, "the amount recovered . . . is not liable to be applied as assets, in the payment of debts or legacies, except as to burial expenses of the deceased, but shall be disposed of as provided in this chapter for the distribution of personal property in case of intestacy." See *Baker v. R. R.*, 91 N. C., 308; *Avery v. Brantley*, 191 N. C., 396,

131 S. E., 721. The statute referred to, C. S., 137, provides that: "(6) If, in the lifetime of its father and mother, a child dies intestate, without leaving husband, wife or child, or the issue of a child, its estate shall be equally divided between the father and mother. . . ."

Where the right of action created by statute for wrongful death does not constitute an asset of the estate, but belongs to the beneficiaries designated by the statute as the beneficiaries of the recovery, as is the law in this State, the administrator in bringing the action is *pro hac vice* their representative and not the representative of the estate. In such cases the prevailing view is to the effect that the negligence of the parent, directly or proximately contributing to the death of a child *non sui juris,* will bar the recovery in an action by the administrator, at least to the extent that the recovery, if any, would inure to the benefit of the parent so guilty of contributory negligence. *Davis v. R. R.,* 136 N. C., 115, 48 S. E., 951, 1 Anno. Cas., 214. See, also, *Harton v. Telephone Co.,* 141 N. C., 455, 54 S. E., 299; *Reid v. Coach Co.,* 215 N. C., 469, 2 S. E. (2d), 578; Annotations 23 A. L. R., 670; 69 A. L. R., 478, where the authorities are assembled.

In *Davis v. R. R., supra,* is laid down what is considered the correct principle as follows: "While the negligence of parents, or others *in loco parentis,* cannot be imputed to a child to support the plea of contributory negligence, when the action is for his benefit, yet, when the action is by the parent, or the parent is the real beneficiary of the action as distributee of the deceased child, the contributory negligence of the parent can be shown in evidence in bar of the action."

However, the weight of authority and the better view is that the contributory negligence of one parent, even though it bar recovery for his or her benefit, or to the extent of his or her interest in an action by the administrator for the death of a child, will not defeat recovery by or for the benefit of the other parent who is not negligent, but that the amount of the verdict will merely be reduced to the extent of the negligent parent's share. Annotations 23 A. L. R., 670, IV 690.

Applying these principles to the case in hand, the judgment below is

Reversed.