AARON M. HORNSTEIN, ADMINISTRATOR (ESTATE OF
ELOISE MARKS) *v.* MARTIN R. MARKS

SUPERIOR COURT       NEW HAVEN COUNTY       FILE NO. 86046

Memorandum filed March 4, 1958

*Krevolin, Feinstein & Freed,* of Hartford, for the
plaintiff.

*Pullman, Comley, Bradley & Reeves,* of Bridge-
port, for the defendant.

COTTER, J.   Plaintiff's intestate was killed in an
automobile accident on December 22, 1956, when she

was a passenger in an automobile owned and operated by her husband, the defendant. They were on their way to Florida with their children for a vacation and had stopped at a motel the day before in Fayetteville, North Carolina. On the morning of December 22, 1956, they started again on their way to Florida. The defendant made a left turn going south into a northbound lane when his car was hit by a bus proceeding in a northerly direction in the northbound lane.

The jury brought in a special finding and verdict as follows: "In this case the jury finds the issues for the plaintiff, finds that the fair and just compensation for the pecuniary injury resulting from the death of Eloise Marks is Thirty-Seven Thousand (37,000.00) Dollars, finds that this amount be reduced by Nine Thousand, Two Hundred Fifty (9,250) dollars (the pro rata share of Martin R. Marks under the Statute of Distribution of the State of North Carolina) and therefore finds for the plaintiff to recover of the defendant Twenty-Seven Thousand, Seven Hundred Fifty (27,750.00) Dollars damages."

The defendant claims that the verdict was excessive, that actionable negligence upon the part of the defendant was not proven, and that the court erred in presenting the North Carolina law of distribution and damages to the jury.

As to actionable negligence, there was evidence which, if believed, would show that the defendant in turning left, going south, into a northbound lane failed to keep a proper lookout. This was shown through testimony as well as evidence from which the jurors might draw reasonable inferences as to the conduct of the defendant. " 'Whether there be *any* evidence, is a question for the judge. Whether *sufficient* evidence, is for the jury.' " *Loomis* v. *Nor-*

*man Printers Supply Co.,* 81 Conn. 343, 347; *Martino* v. *Palladino,* 143 Conn. 547, 548.

As to the rule of damages, the parties and counsel agreed that the North Carolina law in this regard, which is different from the Connecticut rule, should control. Our measure of damages is based upon the survival theory, while that of North Carolina is under a Lord Campbell's Act and is a new cause of action created by statute. The statutes of North Carolina provide that where death results from the wrongful act of another the executor, administrator or collector of the decedent may recover in an action brought by him "such damages as are a fair and just compensation for the pecuniary injury resulting from such death." N.C. Gen. Stat. §§ 28-173, 28-174 (1950). The cause of action for personal injuries ceases with the death of the injured party, and the action is not a survival of the former but an entirely new action. It creates a new cause of action, however, only in the sense that at common law the right did not survive to the personal representative. This new cause of action conferred by the wrongful death statute limits damages to fair and just compensation for the pecuniary injury resulting from death.

The measure of damages in actions for wrongful death is the present worth of the net pecuniary value of the life of the deceased, to be ascertained by deducting the probable cost of her own living and usual or ordinary expenses from her probable gross income which might be expected to be derived from her own exertions during her life expectancy. In arriving at the net pecuniary value of the life of the deceased, the jury is at liberty to take into consideration the age, health, and expectancy of life of the deceased; her earning capacity, her habits, her ability and skill; the (business or) work in which she was employed and the means she had for earning money; the end of it all being to fairly arrive at the net in-

come which the deceased might reasonably be expected to earn from her own exertions, had her death not ensued, and thus assess the pecuniary worth of the deceased to her estate, had her life not been cut short by the wrongful act of the defendant. *Lamm* v. *Lorbacher,* 235 N.C. 728, 730. The jury were instructed in accordance with that law as laid down by the courts of North Carolina. They were also thoroughly instructed as to the element of earning capacity, together with the effect the life expectancy might have had upon this particular death.

Eloise Marks was thirty years old at the time of her death in December, 1956. Marks testified that she graduated from high school and New York University, where she majored in sociology and social work. He stated she did field work in sociology while going to college and later worked for a private agency in New York City and made approximately $50 a week about that time. They were married in 1947 and she continued to work for some time, earning approximately $65 a week until some months before her first child was born. He said they lived then in Niagara Falls, Rome, New York, and then moved to the New Haven area. In view of this, it would not seem that the verdict rendered was excessive. It was a verdict which fell "within the necessarily uncertain limits of fair and reasonable compensation." *Slabinski* v. *Dix,* 138 Conn. 625, 629. "[The] court will not disturb the action of the jury unless the verdict is 'so large as to offend the sense of justice and compel a conclusion that the jury were influenced by partiality, prejudice or mistake.' . . . The question is one peculiarly within the province of the jury. Juries may differ widely in the conclusions which they reach in apparently similar cases, and, in fact, in any given case one jury might arrive at a result substantially different from that of another jury. This flexibility, though it may lead

to uncertainty, is a necessary concomitant of the jury system as it operates in cases of this nature." *Fairbanks* v. *State,* 143 Conn. 653, 660.

In the course of the trial, defendant's counsel called attention to the fact that under North Carolina law a wrongdoer cannot profit from his wrongdoing, and at the trial, in accordance with that proposition, submitted a memorandum of law. In this it is claimed that any recovery under the wrongful death statute is controlled by the North Carolina law as to distribution. *Hartness* v. *Pharr,* 133 N.C. 566. In such case, the estate would be distributed in equal portions to the husband and children. N.C. Gen. Stat. §§ 28-173, 28-149(8) (1950). This the court adopted. The question then arose as to the method in which the court would deal with the established law that the husband as a wrongdoer could not benefit from his wrongful act. The specific procedure has not been set forth in the reported cases. It is only said that "the amount of the verdict will merely be reduced to the extent of the negligent parent's share." *Pearson* v. *National Manufacture & Stores Corporation,* 219 N.C. 717, 722; note, 23 A.L.R. 670, 690.

North Carolina permits a defendant to show in his answer the relationship of the deceased to the defendant and to plead defendant's wrongful conduct as a bar to any recovery. "[O]rdinarily the courts are not concerned as to how or to what particular person or persons a recovery in an action for wrongful death will be distributed . . . . But where . . . the beneficiary of the action was responsible for the death of plaintiff's intestate, another principal of law intervenes." *Davenport* v. *Patrick,* 227 N.C. 686, 688. The court further states: "The courts will look beyond the nominal party whose name appears on the record as plaintiff and consider the legal questions raised as they may affect the real party or

parties in interest. The real party in interest in this action is not the administrator, but the beneficiary under the statute for whom the recovery is sought." It is explicit when it says at page 690: "Hence, if the plaintiff's intestate had left a child or children, this action could be maintained for the benefit of such child or children. The recovery, however, would be limited to the pro rata part to which such child or children would be entitled to take under the statute of distribution." The recovery of the plaintiff is precisely that set forth in the *Davenport* v. *Patrick* case, and the jury specifically followed that precedent.

Actually, better practice would have been for the defendant to plead the wrongdoing of the husband as a bar to a pro rata recovery upon his part rather than to pursue the questionable procedure of leaving a memorandum with the court, asking that it be made a part of the file, and in some nebulous way seek to take advantage of the fact surreptitiously. One case, too, estimates damages under the wrongful death statute by holding that "[t]he true question is, did the relatives suffer any loss by reason of the fact that the deceased failed to live out his expectancy?" *Carter* v. *Railroad,* 139 N.C. 499, 500. If such is the rule as stated, then must we know who the relative is. As a relative, the husband wrongdoer is denied any recovery. In analogous situations where consideration has been received in return for covenants not to sue, anything received on account of the injury inures to all and operates as payment pro tanto. *Dwy* v. *Connecticut Co.,* 89 Conn. 74, 95; *Burkhardt* v. *Armour & Co.,* 115 Conn. 249, 257.

The defendant claimed the husband could not recover, but in the course of trial the court suggested a pleading be interposed. He took no steps to file one but rested upon the claim made, which did not become a part of the pleadings. "[I]f the defendant

desires to take advantage of such facts he is bound to plead them specially. (Practice Book [1934] § 104 [now Practice Book, 1951, § 102]). . . . [I]f the defendant is claiming, not a full settlement, but simply a payment for a covenant not to sue, these facts should be pleaded only as partial defenses and should be labeled as such." *Johnson* v. *Holton (Inglis, J.)*, 10 Conn. Sup. 528, 530. The defendant did not do so, but since he informed the court of his claim, the court must deal with the problem so that justice results.

The North Carolina law is clear that the real parties in interest in this case are the beneficiaries under the North Carolina statute for whom recovery is sought and not the administrator. *Neill* v. *Wilson*, 146 N.C. 242, 245. Damages for wrongful death are not assets of the estate. *Hines* v. *Foundation Co.*, 196 N.C. 322, 324. The right to maintain an action for wrongful death under this law is purely statutory. No such right existed at common law and the rights of the claimants are determined as of the time of the intestate's death. Since all the parties and counsel agreed as to what law applied and what this law was, the jury in arriving at their verdict had the right to know fully the law applicable to the facts. Consequently the court instructed the jury that the law of North Carolina will not permit the defendant to enrich himself as a result of his own misconduct, and that the pecuniary value of the life of the deceased must be reduced to the extent of the negligent parent's share. It charged the jury that: "The recovery is limited, if you find one is warranted, to the pro rata part to which such children would be entitled to take under the statute of distribution."

One of the arguments advanced against permitting the jury to consider this particular question of deducting the pro rata share is that they would tend to

become confused. It was found by them in a special finding and they returned a verdict of $27,750. They evidenced at no time any difficulty or confusion in arriving at this finding or amount. It appears that while the defendant complains, he has also been advantaged, because the value was properly reduced according to law. The jury having made a special finding as to a total amount which was the pecuniary worth of the death and having deducted 25 per cent from that amount, the defendant is at a distinct advantage of $9250 and cannot now complain.

The motion to set aside the verdict is denied.