144 So.2d 638 (1962)
Mrs. Patricia CORCORAN, divorced wife of James Michael CLAIR, Individually and in her capacity as natural tutrix of her minor child, Michael Clair
v.
William G. GAUDET, individually and in his capacity as administrator of the estate of his minor daughter Noelle Gaudet; Noelle Gaudet and Mrs. Oliva Gaudet.
No. 21520.
Court of Appeal of Louisiana, Fourth Circuit.
July 2, 1962.
Rehearings Denied October 4, 1962.
*639 John P. Dowling, William J. Lopez, New Orleans, for plaintiff-appellant-appellee.
Bienvenu & Culver, P. A. Bienvenu, New Orleans, for defendants-appellees and appellants.
Sam Monk Zelden, Max Zelden, New Orleans, for intervenor and appellee-appellant, James Michael Clair.
Before McBRIDE, SAMUEL and HALL, JJ.
SAMUEL, Judge.
Plaintiff instituted this suit to recover damages for herself and her minor child, Michael, resulting from the death of her minor daughter, Patricia. Plaintiff's husband, from whom she was actually separated *640 (not judicially) at the time of the accident and from whom she was divorced at the time of the filing of this suit, intervened in the action seeking damages for himself. The death is alleged to have been caused by the negligent operation of an automobile by a 17 year old minor and the defendants are that minor, her father and her mother.
The case was tried twice to a jury. The first instance resulted in a mistrial because the jury was unable to reach a verdict. The second trial resulted in a verdict and judgment in favor of the defendants insofar as the claims of Mr. and Mrs. Clair were concerned, said claims being dismissed, and in a verdict and judgment in the amount of $30,000.00 in favor of the minor, Michael Clair, brother of the deceased child. Mr. and Mrs. Clair and the defendants have appealed.
The accident happened in Bay St. Louis, Mississippi, on Saturday, May 18, 1957, at approximately 6 p. m. in front of the property known as Camp Onward on South Beach Street, a paved road which runs along Mississippi Sound. The weather was clear and dry and it was still daylight. The roadway in the immediate vicinity is without curves and the driver of a car approaching Camp Onward from the east has straight, clear vision for approximately 200 yards. South Beach Street is lined with residences and camps on the land side and piers on the water side. There was a sign, or signs, in the immediate area of Camp Onward showing the speed limit to be 20 miles per hour.
On that day Mrs. Clair and a friend, Kenneth Ackerman, took her two children, Patricia aged 5½ years and Michael aged 3 years, to Camp Onward on a nursery school outing for the children. During the course of the afternoon those four persons and another little girl of Patricia's age named Marty walked across South Beach Street to the camp's pier. While at the water end of the pier they received information that supper was being served at the camp.
South Beach Street is 24 ft. wide and contains an expansion crack in the center. The front part of the property of Camp Onward is fenced and there is a dirt shoulder, 17 ft. 9 in. in width, between the fence and the edge of the roadway. On the south or water side of the roadway is a concrete wall, forming part of the sea wall, which is 1 ft. 8 in. in height. On the south or water side of the concrete wall is a 5 ft. wide concrete walk. Directly across the road from the pedestrian gate to the camp is the pier which runs from the concrete walk out over the water. To the west of the land end of the pier there is an opening in the concrete wall 4 ft. 6 in. wide to permit passage into the roadway without the necessity of stepping over the wall, the west edge of the pier's land end to the center of the opening being a distance of 3 ft. 3 in.
When the two little girls reached the opening in the concrete wall Marty stopped at the opening. Patricia entered the roadway, her manner of entry being in dispute, and was fatally injured when her forehead came in contact with the knob of the left front door handle (a distance of 8 ft. 1 in. from the front bumper) of the Gaudet station wagon, which was traveling west so that its right hand side of the road was the land side.
The above facts are undisputed or relatively so. The balance of the facts involved are in dispute. The testimony of numerous witnesses was taken during the course of the trial which lasted several days. But with only five exceptions none of these witnesses saw the accident or the events immediately preceding the accident. These five exceptions are Mrs. Clair, Mr. Ackerman, a boy named Gary Courtney, a Mr. McClure and the driver of the Gaudet vehicle.
From our analysis of the testimony given by these witnesses, and of all the testimony and the evidence adduced during the trial of the case in the district court, we find the following facts:
The point at which the child's body came to rest after the accident was either at the *641 center of the roadway or close to that center on the water side. As the vehicle approached, Patricia's companion was standing in the opening in the concrete wall with Patricia about 1 ft. in front of her and approximately that distance in the roadway itself. At that time the adults, Mrs. Clair and Mr. Ackerman, with the small boy Michael were either on the pier a distance of about 15 or 20 ft. behind the two girls or were quite some distance away at the water end of the pier. As the Gaudet vehicle was approaching Patricia suddenly began running across the road and was struck on the forehead by the knob of the left front door handle. The impact took place at or near the center of the roadway and it could have taken place on either side of that center. The Gaudet vehicle was traveling at a speed of 40 to 60 miles per hour. The driver, who was familiar with the area and had traveled it many time, did not see the two little girls standing on the side of the road, never saw Patricia's companion and did not see Patricia until the child was running across the roadway just before the impact. Accordingly, she did not blow the horn or apply the brakes; she swerved to her right in an attempt to pull out of the child's way, lost some control of the vehicle, swerved back to the left in an attempt to regain control and came to a stop approximately a block and a half from the point of impact. She, the driver, attempted to back up but was unable to do so and got out of the vehicle and ran back to where the little girl was lying. The child was dead when examined by a doctor at a hospital less than an hour after the accident.
A state court will not take judicial cognizance of the existence of the laws of another state; the same must be alleged and proved as any other fact in the case and, in the absence of such allegation and proof, they will be presumed to be the same as those of the state where the suit is brought. Sheard v. Green, 219 La. 199, 52 So.2d 714; Welch v. Jacobsmeyer, 216 La. 333, 43 So.2d 678; Succession of Marinoni, 177 La. 592, 148 So. 888. The interpretation, as well as the language, and this includes quantum, of the laws of a sister state also must be alleged and proved as a fact. Taylor v. Terzia, 171 La. 1040, 132 So. 781; see also Smith v. Northern Insurance Company of New York, La.App., 120 So.2d 309. The judgment in this case having been rendered and signed prior to the effective date of the Code of Civil Procedure, Art. 1391 thereof is inapplicable.
In the instant case the Mississippi statute relative to death claims, § 1453 of the Mississippi Code of 1942, as amended, providing, as pertinent to the instant case, for survival of the claim in, and equal distribution of the damages to, the surviving father, mother and brother, was received in evidence by stipulation.
The only other offer relating to Mississippi law which was received in evidence was an ordinance of the City of Bay St. Louis which set a speed limit of 20 (or 25) miles per hour in the area with which we are here concerned. There is considerable argument by defendants to the effect that this ordinance was not properly pleaded and therefore, upon objection timely made, should have been excluded. We do not discuss this feature of the case because the conclusion we reach renders such a discussion unnecessary. A Mississippi statute relative to comparative negligence was offered but, upon objection, rejected by the trial court, which rejection we find to be correct due to the fact that the same had not been pleaded. Accordingly, in the instant case we are controlled by the law of Mississippi only to the extent of the statute introduced in evidence. With that one exception, the law of Louisiana controls.
It is quite clear under our law that a child of Patricia's age, 5½ years, cannot be guilty of contributory negligence. Jackson v. Jones, 224 La. 403, 69 So.2d 729; Rainwater v. Boatright, La.App., 61 So.2d 212; Wise v. Eubanks, La.App., 159 So. 161; Westerfield v. Levis, 43 La.Ann. 63, 9 So. 52.
*642 While there is no uniform rule as to the degree of care which must be exercised by a motorist in the presence of children on or near a public highway, and the facts of each case must determine the question of liability, a high degree of care must be exercised by such a motorist whom the law charges with knowledge that a child is unable to appreciate impending danger, is likely to be inattentive, and might suddenly place himself in a position of peril; the degree of care required is diminished when the child is accompanied by an adult. Burnaman v. LaPrairie, La.App., 140 So.2d 710; Gray v. Great American Indemnity Company, La.App., 121 So.2d 381; Walker v. Jarnevich, La.App., 102 So.2d 770; Brown v. Liberty Mutual Insurance Company, 234 La. 860, 101 So.2d 696.
In the instant case we are of the opinion that the negligence of the driver of the Gaudet vehicle was a proximate cause of the accident. Regardless of whether or not the city ordinance should have been received in evidence, under the circumstances here present, the speed of the vehicle and the failure of the driver to observe the children at the side of the road, with the result that no precautions of any kind were taken to avoid the possibility of Patricia running into the roadway, the driver being charged with knowing of that possibility, constituted such negligence. The driver, of course, is also charged with seeing what she should have seen.
We now address ourselves to the question of contributory negligence. The trial court charged the jury to the effect that Patricia's mother could be guilty of contributory negligence which could bar a recovery by her and by the child's father and the verdict reflects the fact that the jury did find such contributory negligence.
The testimony of two of the witnesses, Mrs. Clair and Mr. Ackerman, is that they were on the pier, engaged in a conversation relative to taking care of Michael and approximately 15 or 20 ft. from the opening in the concrete wall, when the accident occurred. The only other testimony relative to the position of Mrs. Clair and Mr. Ackerman at the time the accident occurred is that of the two other witnesses, Gary Courtney and Mr. McClure, which testimony places Mrs. Clair and Mr. Ackerman quite some distance away at the water end of the pier at that time. The jury thus could have believed either set of witnesses and we are unable to say that such a conclusion was error; in either case the little girls were beyond effective adult control. Under the authority of Wise v. Eubanks, supra, we will not disturb the finding of contributory negligence on the part of Mrs. Clair.
Even though Mr. and Mrs. Clair were actually separated at the time of the accident, the husband remained the head and master of the community which continued to exist between them and we must consider the wife as the agent of the husband in the care and custody of the children born of the marriage. We are therefore of the opinion that the negligence of the wife is imputed to the husband. We have found no Louisiana case in point, but the rule, as expressed in 65 C.J.S. Verbo Negligence § 163, at page 806, is:
"The contributory negligence of one parent in caring for a child is imputed to the other where the former is the agent of the latter in the care, custody, and control of the child, but not where, by statute, neither parent is the agent of the other in the care and custody of their children."
Defendants contend that the award of $30,000.00 is excessive and plaintiff contends that the same is inadequate. A determination of the proper amount of damages to be awarded for a death always presents difficulties, especially where the death is that of a young child. Each case depends largely on its own facts. The award to a brother, particularly where, as in this case, that brother was only 3 years of age at the time of his sister's death, should be something less than the amount to which a parent is entitled. A 3 year old boy is not likely to remember for long the society, *643 companionship, affection and love which he has lost by reason of his sister's death. The parents are not likely to forget. This does not mean that the brother's award is to be treated lightly. But we are of the opinion that $30,000.00 is excessive and reduce the same to $10,000.00.
For the reasons assigned, the judgment appealed from is amended only insofar as to decrease the award in favor of Mrs. Patricia Corcoran, divorced wife of James Michael Clair, in her capacity as natural tutrix for the use and benefit of the minor child, Michael Clair, from the sum of $30,000.00 to the sum of $10,000.00. As thus amended, and in all other respects, the judgment is affirmed, plaintiff and intervenor to pay the cost of this appeal.
Amended and affirmed.