351 So.2d 312 (1977)
Ronald CARTER et al., Plaintiffs-Appellants,
v.
R. L. SALTER et al., Defendants-Appellees.
No. 6161.
Court of Appeal of Louisiana, Third Circuit.
October 17, 1977.
Rehearing Denied November 10, 1977.
Writ Refused December 14, 1977.
*313 Davis & Simmons by Kenneth N. Simmons, Many, for plaintiffs-appellants.
Brittain & Williams by Jack O. Brittain, Natchitoches, for defendants-appellees.
Before DOMENGEAUX, WATSON and FORET, JJ.
WATSON, Judge.
Plaintiffs, Ronald and Frances Carter, have appealed from a trial court judgment dismissing their suit asking damages for the death of their two year old son, Randson Brent Carter ("Brent"). Named as defendants are R. Larry and Mary Salter and their homeowner's insurer, Louisiana Farm Bureau Mutual Insurance Company. A Honda CB360T motorcycle fell on the child and critically injured him at the Salter home on November 4, 1975.
The Salters and their insurer asserted third party claims against the Carters, claiming reimbursement or contribution. Defendants have answered the appeal.
Prior to trial on the merits, a declaratory judgment was rendered decreeing coverage under the Louisiana Farm Bureau Mutual Insurance Company policy.
The motorcycle was resting on its left side kickstand adjacent to the front wall of the carport of the Salter home. Its dry weight was 357 pounds. The gas and oil weighed another twenty pounds. It was equipped with both a center and a side kickstand. The center stand picks the back wheel up off the ground; the side kickstand holds the motorcycle at an angle. Ira Joe Key, owner and operator of the Honda Shop in Many, testified that the center stand would be the most secure but that either one was safe.
The motorcycle belonged to Gary Bryan Gates, a 14 year old son of Mrs. Salter by a previous marriage, who was living with his mother and stepfather, in the legal custody of his mother. The motorcycle had been lodged in the carport for two or three weeks because of Bryan's bad grades. It *314 had never fallen during the year and a half he had owned it but fell twice on the day of the fatality. Bryan said he always used the side kickstand because use of the center stand necessitated picking up the rear of the motorcycle, which he was unable to do. Bryan said there was no place to store the motorcycle except the carport.
The Salters and Carters are neighbors living within view of each other, less than a mile apart. On the day of the accident, Frances Carter, three year old Ronald Ray Carter, Jr. and two year old Brent, were visiting by invitation with Mrs. Salter and a two or three year old daughter, Kendra Ray Salter. Frances Carter did not often go to the Salter house because she did not drive and the two husbands did not get along well. Mr. Carter testified that he did not know his wife and children were going to the Salter residence that day; he preferred his wife to stay at home. Also present were John Riley Gandy (cousin of Larry Salter and uncle of Ronald Carter) and his wife, who were on vacation. Mr. Salter and Mr. Carter were at work. Other children in the families were at school. The three women were in the kitchen, frying chicken and making other preparations for lunch. The three small children were playing outside. The motorcycle first fell ten to thirty minutes before Brent's accident in the presence of the other two children, who were uninjured. Brent was elsewhere. The cycle's kickstand was on the left. It fell over on the right side, away from the carport wall. John Gandy picked up the motorcycle and put it back in the same place. Mrs. Salter warned the children of the danger and told them the motorcycle could kill them. Mrs. Carter was in the bathroom but came out during the scolding, as did Brent. Mrs. Carter had not previously noticed the motorcycle. Mrs. Carter quoted Mrs. Salter as saying after this first fall that she had told her husband to put the motorcycle up before he went to work offshore: "But as usual, he never has time to do anything around here." (TR. 188) Mrs. Salter did not remember such a discussion with her husband but admitted it might have taken place. Mr. Salter did not testify. According to Mrs. Carter, "Uncle" John Gandy, who was outside on the patio, was supposed to be supervising the children.
When the motorcycle fell on Brent a short time later, no one else was present. The sound made by the two falls was the same. Gandy lifted the cycle off Brent, who was crying. Brent subsequently became short of breath and turned pale. The three women drove him to the hospital, leaving John Gandy to watch the other children. Brent was whining and/or crying. He died either just before or just after arrival at the hospital, an hour or more after the injury. Brent was 2 years and 15 days old. Mr. and Mrs. Carter testified about the trauma and loss they sustained; Mrs. Carter said she had suffered a miscarriage subsequent to the accident. Although she had had a daughter prior to her marriage to Carter, they have only one surviving son of the marriage.
The funeral bill was $200, and the medical expenses for Brent were $120.
The trial court concluded that there was no negligence on the part of Mrs. Salter. Pampas v. Cambridge Mutual Fire Insurance Co., 169 So.2d 200 (La.App. 4 Cir. 1964) writ refused 247 La. 344,170 So.2d 865, was cited as authority for Mrs. Carter's paramount duty to watch and protect her minor son. In effect, the mother was found negligent in her supervision of Brent.
Appellants contend that defendants are strictly liable even in the absence of negligence. The Salters had custody of the motorcycle, as that term is used in LSA-C.C. art. 2317 [1], and the motorcycle created an unreasonable risk of injury under the rationale of Loescher v. Parr, 324 So.2d 441 (La., 1976), constituting an attractive nuisance to Brent. This postulation is not *315 tenable. The evidence does not show a defect in this motorcycle which differentiated it from any other. Such a machine at rest does not create an unreasonable risk of harm to others under ordinary circumstances. Compare Stewart v. Zurich Ins. Co., 342 So.2d 1273 (La.App. 4 Cir. 1977).
In the alternative, it is urged that the Salters were negligent, and we will address this issue.
Brent's injury and death resulted from the concurrence of two causes in fact. One cause was the failure of the Salters to secure the motorcycle and the second was the failure of the adults present to supervise the children. Brent's death occurred both because the motorcycle was unstable and because the children were not closely watched. Brent's age makes him incapable of legal fault.
The inquiry then is whether the Salters were under a legal duty to protect Brent from this particular risk or whether, as the trial court apparently found, the sole legal duty was owed by Brent's mother.
The duty owed by Mr. and Mrs. Salter was to make the premises of their home reasonably safe for those present. A machine which weighs over 300 pounds should not topple from the exertions of a two year old child. However, mere possession of the motorcycle might not create a corresponding duty to see that it did not fall, since the Salters may not have been aware of the danger prior to the first fall. After the first accident, Mrs. Salter was aware of the risk, and a duty arose to prevent what actually occurred, the crushing injury to Brent from a subsequent accident. It was then foreseeable that Brent's accident would occur. The danger was one that the child could not understand or appreciate. The motorcycle at that time presented a recognizable and unreasonable risk of harm. Mrs. Salter was on notice of the danger and was responsible for taking precautions against it. Her failure to do so was substandard and negligent. LSA-C.C. art. 2316.[2] Mrs. Carter was similarly negligent. The danger was as obvious to her as it was to Mrs. Salter. Shelton v. Aetna Casualty & Surety Company, 334 So.2d 406 (La., 1976).
The next issue is whether Frances Carter can recover for her son's wrongful death despite her negligence. One should not profit from wrongful conduct. Compare Dumas v. United States Fidelity & Guaranty Company, 241 La. 1096,134 So.2d 45 (1961) and Dickerson v. Illinois Cent. Gulf R. Co., 553 F.2d 423 (5 Cir. 1977). See the discussion in 37 La.L.R. 1. Mrs. Carter's negligence bars her action for her son's wrongful death.
Can Mrs. Carter's negligence be imputed to her husband and bar his claim for his son's wrongful death?
Were the question one of imputing the negligence of the husband to the wife, the jurisprudence is clear. The husband's negligence cannot be imputed to his wife. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963); Vitale v. Checker Cab Co., 166 La. 527, 117 So. 579 (1928); Kientz v. Charles Dennery, 209 La. 144, 24 So.2d 292 (1945); Granier v. Aetna Insurance Company, 209 So.2d 132 (La.App. 4 Cir. 1968). See also the original Supreme Court opinion in Billiot v. Bourg, 338 So.2d 1148 (La., 1976).
The doctrine of imputed contributory negligence came to Louisiana via the common law. See Clair v. Gaudet, 144 So.2d 638 (La.App. 4 Cir. 1962), which imputed the wife's negligence to the husband on an agency theory to bar recovery for the death of a child, citing Corpus Juris Secundum. The doctrine has been criticized in Louisiana. See, for example, the original opinion by Justice Bolin in Callais v. Allstate Insurance Co., 334 So.2d 692 (La., 1976).
The general rule is that negligence can be imputed to an innocent party only when that party is legally responsible for the torts of the negligent party. Gaspard *316 v. LeMaire, supra; Sutton v. Rogers, 222 So.2d 504 (La.App. 2 Cir. 1969).
There is no legislation in Louisiana which renders a wife or husband liable for the delicts of the spouse. The jurisprudence imputes the negligence of a wife to her husband only when she is driving a car on a community mission. Vail v. Spampinato, 238 La. 259, 115 So.2d 343 (1959); Vidrine v. General Fire and Casualty Company, 168 So.2d 449 (La.App. 3 Cir. 1964); Adams v. Golson, 187 La. 363, 174 So. 876 (1937).
The fact that the wife's damages are her separate property was relied on in Vitale, to support the conclusion that the husband's negligence is not imputed to the wife. Since the damages recoverable by the husband in Louisiana are community property, there is thus a theoretical basis (other than the questionable agency theory of Clair) for imputing the negligence of the wife to the husband and preventing the wife from indirectly profiting by the enrichment of the community.
Dean Prosser has written:
". . . imputed contributory negligence on the basis of the marriage alone has vanished from the law of most jurisdictions. The only exception is found in the case of one or two jurisdictions, which under the influence of the civil law, treat the damages recoverable by either spouse as community property, and therefore continue to impute the negligence of one to the other in order to prevent the negligent party from profiting as community owner by his own wrong.

* * * * * *
"There are one or two states in which the negligence of one spouse is still imputed to the other to bar an action for wrongful death of a child. See for example Martinez v. Rodriquez, Fla.1969, 215 So.2d 305." William L. Prosser, Law of Torts, 4th Ed., pg. 490.
In Martinez, the wife's negligence in supervising a two year old child barred recovery by the father. However, Florida has since adopted a comparative negligence doctrine. See Hoffman v. Jones, 280 So.2d 431 (Fla., 1973). Compare Reynolds v. Thompson, 215 S.W.2d 452 (Mo., 1948); Tufty v. Sioux Transit Co., 70 S.D. 352, 17 N.W.2d 700 (1945); and Pearson v. National Manufacture & Stores Corp., 219 N.C. 717, 14 S.E.2d 811 (1941).
58 Am.Jur.2d Negligence § 468, at page 35, states:
"An exception to the rule that the negligence of one spouse will not be imputed to the other is made in certain cases in which any recovery would become the joint property of both spouses, and thereby profit or enrich the spouse whose fault contributed to the harm."
The distinction drawn in Vitale, supra, between imputing the husband's negligence to the wife and the wife's to the husband, although tenuous and without practical justification, has remained the law in Louisiana. See 37 La.L.R. at 42 and 43. See also Monge v. New Orleans Ry. & Light Co., 145 La. 435, 82 So. 397 (1919), where the wife's negligence was imputed to the husband to bar recovery of medical expenses.
We conclude that Mrs. Carter's negligence must be imputed to her husband and that her negligence bars his action for Brent's wrongful death.
Likewise, under the jurisprudence of this circuit, both Mrs. Carter and Mr. Carter are barred from recovering in their survival actions for Brent's pain and suffering by Mrs. Carter's negligence and its imputation to her husband. Moore v. Kinney, 315 So.2d 340 (La.App. 3 Cir. 1975).[3]
The next question is whether Ronald Carter can recover for his son's medical and funeral expenses. This item of damages is not an enrichment of the community but a reimbursement of a monetary loss.
*317 McHenry v. American Employers' Ins. Co., 206 La. 70, 18 So.2d 656 (1944), held that a wife's negligence is not imputed to the husband to preclude recovery of damages for his personal injuries, loss of wages, and medical expenses, which would reimburse rather than enrich the community. McHenry applies. Mr. Carter is entitled to the medical and funeral expenses of $320. Monge, supra, is an older case than McHenry, supra, and the latter controls. The logic of McHenry cannot be gainsayed as to items of damages which represent an actual monetary loss, although its rationale does not extend to cover the wrongful death of a child.
The last issue is that of contribution because of Mrs. Carter's negligence. Defendants are entitled to recover one-half of the award of medical and funeral expenses from the co-tortfeasor, Frances Carter. Walker v. Milton, 263 La. 555, 268 So.2d 654 (1972).
For the foregoing reasons, the judgment of the trial court herein dismissing the claims of Frances Carter and Ronald Carter for Brent's wrongful death, as well as their survival actions, is affirmed.
The judgment of the trial court dismissing Ronald Carter's claim for medical and funeral expenses is reversed. It is ordered, adjudged and decreed that there be judgment herein in favor of plaintiff, Ronald Carter, and against defendants, Mary Salter and Louisiana Farm Bureau Mutual Insurance Company, in the sum of $320, together with legal interest from date of judicial demand until paid.
It is further ordered, adjudged and decreed that defendants, Mary Salter and Louisiana Farm Bureau Mutual Insurance Company, have judgment over against Frances Carter for contribution of one-half of the amount awarded.
Under the circumstances, all costs at trial and on appeal are assessed to defendants-appellees, Mary Salter and Louisiana Farm Bureau Mutual Insurance Company.
AFFIRMED IN PART; REVERSED IN PART AND RENDERED.
NOTES
[1] LSA-C.C. art. 2317:

"Art. 2317. We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications."
[2] LSA-C.C. art. 2316:

"Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill."
[3] The author of this opinion would be inclined to decide the survival actions otherwise on the basis of Austrum v. City of Baton Rouge, 282 So.2d 434 (La., 1973), but recognizes that Austrum does not squarely confront and discuss the issue, except in result. See Prof. Alston Johnson's analysis at 37 La.L.R. 46.