468 So.2d 819 (1985)
Mrs. Pauline Landry HUMPHRIES
v.
T.L. JAMES & COMPANY, et al.
No. CA 84 0240.
Court of Appeal of Louisiana, First Circuit.
April 16, 1985.
Writ Denied June 7, 1985.
*820 Joel Hanberry, Cut Off, for plaintiff, appellant.
Gerald M. Dillon, New Orleans, for W.R. Aldridge and Co., defendant.
William J. Doran, Jr., Baton Rouge, for State of La., defendant.
James Jenkins, Covington, Lane Carson and Tom Thornhill, Slidell, for St. Tammany Parish, defendant.
Ernest T. Landry, Metairie, for E.L. Codifer, defendant.
Guy L. Deano, Jr., Covington, for Louis & Diane Codifer, defendant.
Patrick J. Brown, New Orleans, for Edwin T. Toca, defendant.
Before GROVER L. COVINGTON, C.J., and LOTTINGER and JOHN S. COVINGTON, JJ.
LOTTINGER, Judge.
This is an action ex delicto by Mrs. Pauline Landry Humphries for the wrongful death of her six year old son, Paul Bernard Humphries. Young Humphries died as a result of drowning in a borrow pit located approximately 100 feet from the Humphries' trailer. The borrow pit had been dug some years previously in conjunction *821 with the construction of the Interstate Highway System in Slidell. Defendants at the time of trial were St. Tammany Parish Police Jury; the State of Louisiana through the Department of Highways; W.R. Aldrich & Company, a partnership composed of Lee A. Holland and Ruby Holland; and Edwin P. Toca. T.L. James & Company, Inc., Louis P. Codifer, E.L. Codifer and Diane Codifer were dismissed as defendants prior to trial, and the defendant Best Fishing, Inc. was never served. From a judgment in favor of the defendants dismissing plaintiff's suit, plaintiff has appealed.
In appealing plaintiff contends the trial judge erred:
1) in finding plaintiff guilty of contributory negligence;
2) in failing to find the borrow pit constituted an attractive nuisance;
3) in failing to find the trial defendants strictly liable and/or negligent for the creation, allowance and/or maintenance of the borrow pit as a proximate cause of the drowning; and
4) by finding that plaintiff must show the exact point of entry of decedent into the water in order to prove the location of the drowning.
The trial judge prepared excellent written findings of facts and reasons for judgment which we adopt, to wit:
"The plaintiff herein seeks recovery in tort for the death of her minor son who drowned in a borrow pit on February 20, 1973.
"On the afore-mentioned date, the plaintiff, Pauline Landry Humphries and her minor son, Paul Bernard Humphries, were living in a trailer park in a mobile home located adjacent to a borrow pit which was known as Lake 8 or the Roy Allen Pond. The plaintiff's trailer was located approximately 75 to 100 feet away from the pond. Mrs. Humphries was engaged in housework in her trailer while her young son played in a play area outside the trailer. Although Mrs. Humphries testified that she was watching her son by checking on him every few minutes or so the child wandered off and subsequently drowned in borrow pit No. 8, from which his body was recovered.
"The plaintiff seeks recovery on the basis of strict liability and/or negligence on the part of the defendants.
"Under a theory of strict liability, the delictual responsibility of the defendant is based, not upon negligence, but upon legal fault. La.Civ.Code Art. 2317 et seq. sets forth the criteria under which a party will be held strictly liable. This article provides in part:
We are responsible, not only for the damages occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody
...
Neither knowledge of the defect nor any particular act or omission by the defendant are prerequisites to a finding of liability. The plaintiff need only prove that (1) the thing which caused his injury was within the defendant's care and custody; (2) the thing had a vice or defect, i.e. that it occasioned an unreasonable risk of injury; and (3) his injury was caused by the defect. Once these elements are established, the defendant can escape liability only by showing that the plaintiff's injury was caused by the plaintiff's own fault, by the fault of a third party or by an irresistible force. Jones v. City of Baton Rouge, 388 So.2d 737 (La.1980), Loescher v. Parr, 324 So.2d 441 (La.1975). The Louisiana case law has consistently held that things in one's custody means such things over which one has or maintains supervision, care and control. Washington v. T. Smith and Son, 68 So.2d 337 (4th Cir.1953), Wilcox v. American Oil Co., 215 So.2d 402 (2nd Cir.1968), Smith v. Chemical Const. Corp., 215 So.2d 530 (1st Cir.1968).
"Testimony adduced at trial showed that W.R. Aldrich and Company, a partnership, and its partners Lee A. Holland and Ruby Holland, caused to be excavated the borrow pit known as Lake 8 or Roy Allen Pond under a borrow pit agreement between *822 Louis P. Codifer, et al and the State of Louisiana and the Department of Highways of the State of Louisiana, dated November 7, 1961, and a borrow pit agreement between Codifer Development Company, Inc. and the State of Louisiana and the Department of Highways of the State of Louisiana dated November 7, 1961. The borrow pit was to be located adjacent to Interstate Highway I-10 and between the two Slidell exits for the said highway and was designated as borrow pit No. 8.
"The borrow pit agreements between the Department and the landowners provided as follows: `It is further understood and agreed that the right of the said Department, its agents and contractors to excavate, remove and haul borrow or earth material as herein set forth, shall terminate on the date upon which the above described project is fully completed and finally accepted by the said Department, and that the fee simple title to the area upon which the pit is to be located is to remain vested in grantor, its successors and assigns.'
"W.R. Aldrich and Company was duly authorized by the Department of Highways of the State of Louisiana to excavate materials from borrow pit No. 8. The last materials excavated from borrow pit No. 8 by Aldrich were used in connection with State Project Nos. 450-18-03, 450-18-01, 450-18-07 and 453-01-03, all of which were completed by Aldrich and accepted by the Department of Highways, prior to August, 1966. Aldrich ceased excavating materials from borrow pit No. 8 prior to August, 1966. The acceptance of this work by the Department of Highways was filed for record on September 16, 1965, and was made a part of the record in the instant suit.
"The terms of the borrow pit agreement itself state that these defendants acquired no ownership interest in and to the property by virtue of their activities upon the property. These defendants relinquished custody and control over the excavation with the acceptance of their work by the Department of Highways, as provided for in the original borrow pit agreement between the Department and the landowners.
"The Court finds that the borrow pit in question was not in the care, custody or control of the defendants Aldrich, its partners or the State of Louisiana, Department of Transportation and Development, at the time of the accident nor had these defendants exercised any custody or control over this excavation for approximately seven years prior to the accident. Accordingly, recovery is barred under a theory of strict liability as to these defendants.
"The borrow pit is comprised of approximately twenty-one different parcels of ground owned by separate and individual landowners. The plaintiff sought to prove that the minor child drowned in an area of the pit located upon land owned by two of these landowners, the Parish of St. Tammany and Edwin P. Toca. The Court finds that even if the plaintiff proved that an area of the pit was owned by the Parish and Toca, she failed to prove beyond mere conjecture that the child actually drowned in this particular area. The plaintiff failed to show the child's point of entry into the water so that the location of the drowning could be established.
"The court cannot ascribe a duty of care to these defendants in the absence of proof of care and custody, through ownership or otherwise, on their part. Accordingly, recovery is barred under a theory of strict liability as to these defendants.
The plaintiff alleges in her petition that borrow pit No. 8 constituted an attractive nuisance and that the defendants were negligent in failing to provide any safeguards against persons falling into the excavation.
"The Louisiana jurisprudence has consistently held that the attractive nuisance doctrine does not apply to a pond unless there is some unusual condition or artificial feature other than the mere water and its location, rendering the place peculiarly dangerous to children. The doctrine also does not apply unless the danger be unknown, concealed or hidden. Slaughter v. Gravity Drainage District No. 4, 145 *823 So.2d 50 (3rd Cir.1962) and cited with approval in Miles v. City-Parish Government, 253 So.2d 681 (1st Cir.1971); Atwell v. City of Baton Rouge, 286 So.2d 783 (1st Cir.1973).
"The Court in Slaughter stated:
`There, of course, are inherent dangers of drowning in every body of water, including a canal. A drainage district which constructs and maintains a canal as a part of its public function, however, does not become the insurer of the lives and safety of all children who come near the waterway. There the canal is open and in full view of those who come near it, the facility itself serves as a warning of the dangers which are apparent especially to those who are of the age of discretion. Where the danger is not hidden or concealed and there are no unusual circumstances which render the facility peculiarly attractive to young children, we think there is no duty on the part of the drainage district to provide safeguards against persons falling into the excavation, such as fences or warning signs. Where those conditions exist the drainage district has the right to presume that for every child under the age of discretion, there is some one of mature judgment on whom rests the special duty and responsibility for the safety of the child. Also, we feel that the construction of the canal with extremely steep inclines along its banks or sides alone does not constitute actionable negligence on the part of the drainage district.' [145 So.2d 55]
"Considering all the facts as set out in the plaintiff's petition and at the trial, the Court finds that the plaintiff has not alleged any unusual features or physical characteristics of this pond which made it peculiarly attractive and dangerous to children on the date of the drowning. No hidden or concealed dangers were alleged and there were no allegations to the effect that the borrow pit was useless. Although evidence was presented at trial that a pier was constructed by the husband of Mrs. Wanda Hale Wright on a portion of the pit which, conceivably, could be sufficient to state a cause of action based upon the theories of negligence and attractive nuisance, Mr. Wright is not a defendant in the instant case. Responsibility for his actions cannot be imputed to those parties who were made defendants in this action.
"Under Louisiana law, parents are required to properly supervise and protect their young children. Guidry v. Hamlin, 188 So. 662 (Orl.La.App.1939); Carter v. Salter, 351 So.2d 312 (3rd Cir.1977). A parent's duty of supervision is measured by a standard of what a reasonable parent would do under the same or similar circumstances. Ryals v. Home Ins. Co., 410 So.2d 827 (3rd Cir.1982). Mrs. Humphries knew of the existence of the borrow pit which was approximately 100 feet from her trailer. Mrs. Humphries allowed her child to play outside the trailer which was near the area of the pit. The Court finds that the plaintiff failed to provide adequate supervision for her child at the time of the accident. The day's activities would not have made more adequate adult supervision by Mrs. Humphries impossible or inconvenient. See Guillot v. Fisherman's Paradise, Inc., 422 So.2d 1194 (1st Cir. 1982).
"In as much as the Court finds that the plaintiff, Pauline Landry Humphries, was contributorily negligent, the plaintiff's recovery under a theory of negligence on the part of any and all defendants is, therefore, barred."

ERROR NO. 1
Plaintiff-appellant argues that the trial judge relied heavily on Guillot v. Fisherman's Paradise, Inc., supra, which case was reversed by the Supreme Court at 437 So.2d 840 (La.1983). We do not find the trial judge based his opinion totally on Guillot. The facts of this case are distinguishable from those of Guillot. In the case sub judice Mrs. Humphries admitted knowing the presence of the pit, whereas in Guillot the Supreme Court found that "the record establishes that neither the Guillots *824 nor the Sellers knew of the existence of the sewerage oxidation pond." 437 So.2d at 843.
We find no merit to this assignment of error.

ERROR NO. 2
The attractive nuisance doctrine is applicable only to the owner, possessor or person in control of the offending land or other instrumentality whereon the trespassing child sustains his injury. A.L.I. Restatement of the Law of Torts 2d § 339; 65 C.J.S. 807 Negligence § 63(71). Thus the attractive nuisance doctrine is not applicable to W.R. Aldrich & Company and the Department of Highways.
We agree with the trial judge that the pit in question did not constitute an attractive nuisance under the facts of this case. Thus, this assignment of error is without merit.

ERROR NO. 3
Plaintiff argues that the Department of Highways and W.R. Aldrich & Company are liable under La.Civ.Code arts. 2315 and 2316 for failing to fence the pit after it was dug. This theory might be correct if these two defendants would have been the owners of the pit at the time of the drowning, but these defendants were never the owners. And, assuming arguendo that they were the original owners when the pit was dug, but subsequently sold the unfenced pit, there would still be no liability under negligence for a later drowning.
The trial judge's reasons adequately dispose of plaintiff's argument on strict liability. Thus we find no error on the part of the trial judge.

ERROR NO. 4
Considering the reasons for judgment, we find no merit in this assignment of error.
Therefore, for the above and foregoing reasons, the judgment of the trial court is affirmed at plaintiff-appellant's costs.
AFFIRMED.