687 So.2d 1007 (1997)
Cynthia EDWARDS, et al.
v.
Michael Andrew HORSTMAN, et al.
James H. EDWARDS
v.
Michael A. HORSTMAN.
No. 96-C-1403.
Supreme Court of Louisiana.
February 25, 1997.
Rehearing Denied March 27, 1997.
*1008 John Chris Turnage, Mayer, Smith & Roberts, Shreveport, for applicant.
Jack Moore Bailey, Jr., James Allen Cooper, Jr., Shreveport, for respondent.
MARCUS, Justice.[*]
Cynthia Edwards, while riding as a guest passenger in a Chevrolet convertible, was *1009 shot and seriously injured by a passenger in a Toyota pick-up truck. Cynthia and her mother filed suit against, among others, the driver of the Toyota pick-up (James Furgason); the person who shot her (Michael Horstman); the driver of the vehicle she was riding in (Shane DeMoss); and the owner of the vehicle she was riding in (Michael Turner), who was also a passenger at the time.[1] Neither the pick-up truck nor the convertible were covered by policies of automobile liability insurance in accordance with state law.
By supplemental and amending petition, plaintiffs added as a defendant State Farm Mutual Automobile Insurance Company, which afforded UM coverage in favor of Cynthia for damages she was legally entitled to collect from the drivers or owners of any uninsured motor vehicles involved.[2] Plaintiffs also added as a defendant Blue Ridge Insurance Company, the homeowner's insurer of Shane DeMoss, who was driving the convertible in which Cynthia was riding as a guest passenger at the time of the shooting incident. Blue Ridge filed a motion for summary judgment, asserting that the conduct of its insured which allegedly caused Cynthia's injury constituted "use" of an automobile. Injuries arising out of the "use" of an automobile were excluded from coverage under the terms and conditions of the Blue Ridge policy. The trial judge denied the motion, holding that sufficient disputed material facts existed to preclude summary judgment.
After a trial on the merits, judgment was rendered against Blue Ridge for stipulated damages of $100,000.00 (policy limits). The trial judge ruled that DeMoss was negligent in knowingly exposing Cynthia Edwards to an unreasonable risk of harm. He also found that her injuries did not arise out of the "use" of the DeMoss vehicle. Accordingly, he found that the coverage exclusion in the Blue Ridge policy was inapplicable and that Cynthia's injuries were covered under the Blue Ridge policy.[3] The court of appeal affirmed the judgment of the trial court.[4] Upon the application of Blue Ridge, we granted certiorari to review the correctness of that decision.[5]
The narrow issue presented for our review is whether Shane DeMoss' liability for the injuries to Cynthia Edwards arose out of the "use" of a motor vehicle so as to fall within the exclusion from coverage in the homeowner's policy issued by Blue Ridge Insurance Company.[6]
The relevant facts in this case are not in serious dispute. On May 13, 1986, Cynthia *1010 Edwards was in the company of numerous other high school students at a park on Cypress Lake in Bossier City, where they had gone to celebrate "Senior Skip Day." Cynthia left the park as a passenger in a top-down Chevrolet convertible; she was seated on top of the back seat. Close to that time, a Toyota truck driven by James Furgason exited the park at a low rate of speed. Furgason and his passenger, Michael Horstman, were not part of the student group at the park. The truck was immediately followed by a Monte Carlo, whose passengers became exasperated at the truck's slow rate of speed and began making obscene gestures and comments to the occupants of the truck as they attempted to pass it on the roadway. The occupants of the Toyota truck responded in kind. In addition, the passenger in the truck, Michael Horstman, pulled out a shotgun and brandished it at the occupants of the Monte Carlo. The Monte Carlo accelerated, passed the truck, caught up with, and pulled alongside the convertible driven by Shane DeMoss. The Monte Carlo's occupants informed their fellow students in the convertible that the occupants of the Toyota truck behind them in the roadway had a gun. The Monte Carlo then accelerated to get away from the truck. The truck eventually passed the DeMoss vehicle as it chased the Monte Carlo.
Shane DeMoss admitted in testimony that as he proceeded down the roadway behind the truck, he knew the occupants of the truck were armed and that they were chasing the students in the Monte Carlo. His front seat passenger, Michael Turner, climbed into the back seat to retrieve a .357 Magnum. Turner returned to the front seat and placed the gun on the seat beside him. DeMoss saw the shotgun sticking out of the Toyota truck's back window as he rounded a curve in the roadway. He testified that he thought there might be trouble between his vehicle and the truck. Nevertheless, he attempted to pass the truck. At this point the truck veered over in front of the convertible to prevent DeMoss from passing and ran DeMoss off the road. DeMoss knew that Cynthia was seated in a precarious and exposed position atop the rear seat of the convertible. He conceded that he also knew he could have stayed on the shoulder until the truck pulled far ahead. Moreover, he could have slowed his vehicle or taken an alternate route to avoid trouble. Instead, he chose to reenter the roadway and drive the convertible so as to stay close to the truck, even though the truck's passenger was pointing a shotgun at the convertible and even though its driver had already run him off the roadway. At this point DeMoss' passenger, Turner, raised his .357 Magnum in the air and fired. Simultaneously, Michael Horstman in the Toyota truck pulled the trigger of the shotgun he had been pointing at the convertible. Cynthia Edwards, still seated atop the back seat, was struck and seriously injured by shotgun pellets.
Neither party disputes the fact findings of the trial judge or the finding of liability on the part of Shane DeMoss. However, Blue Ridge claims that DeMoss' liability arose out of the "use" of an automobile and is therefore excluded from coverage under the Blue Ridge policy. The disputed exclusion from coverage in the homeowner's policy provides in pertinent part:

SECTION II-EXCLUSIONS
1. Coverage EPersonal Liability and Coverage FMedical Payments to Others do not apply to bodily injury or property damage:
. . .
e. arising out of:
(1) the ownership, maintenance, use, loading or unloading of motor vehicles... operated by ... an insured; (emphasis in original).
In order for plaintiffs to recover under the Blue Ridge policy for the personal liability of Shane DeMoss, Cynthia's injuries cannot have arisen out of the "use" of the automobile Shane DeMoss was operating at the time of the incident. In Carter v. City Parish Government of East Baton Rouge, 423 So.2d 1080 (La.1982), we established the analysis to be used in determining whether an "arising *1011 out of the use" provision has been satisfied.[7] Since the exclusion provision in the Blue Ridge policy is designed to exclude coverage for liability resulting from conduct of an insured that constitutes both a legal cause of injury and a "use" of the vehicle, we are required to answer two separate questions:
(1) Was the conduct of the insured of which the plaintiff complains a legal cause of the injury?
(2) Was it a "use" of the automobile?
We reiterated the appropriateness of this two step analysis in our decision in Kessler v. Amica Mut. Ins. Co., 573 So.2d 476 (La. 1991).
Although the finding that DeMoss' conduct was a legal cause of Cynthia's injury is not in dispute, we recognized in Carter that the proper articulation of the basis of a defendant's liability is helpful in answering both questions. Therefore, we first address whether the conduct for which the trial judge found DeMoss liable, exposing Cynthia to an unreasonable risk of harm, was a legal cause of her injuries.
As we held in Carter, in order to determine whether the conduct complained of was a legal cause of the plaintiff's injury, it is first necessary to determine whether the defendant's conduct was a cause in fact of the injury. An action is the cause in fact of an injury if it is a "substantial factor" in bringing about the harm to the plaintiff. Breithaupt v. Sellers, 390 So.2d 870 (La.1980). We have no trouble concluding that but for DeMoss' conduct in purposefully driving his vehicle at a sufficient rate of speed so that it would remain within the range of Michael Horstman's shotgun, Cynthia's injuries would not have occurred. Thus, DeMoss' conduct was a cause in fact of the shooting incident.
We are next required to define the duty which was breached by DeMoss and to determine whether the risk created was within the scope of the duty. We have long held that a motorist must use such diligence and care in the operation of his vehicle as is commensurate with the circumstances. The greater the danger, the greater the degree of care required. Culpepper v. Leonard Truck Lines, Inc., 208 La. 1084, 24 So.2d 148 (1945). Moreover, a host driver has a duty to operate his vehicle with reasonable care under the prevailing circumstances for the benefit of guest passengers who might be injured if he fails to do so. Campbell v. Department of Transp. & Dev., 94-1052 (La.1/17/95); 648 So.2d 898; Molbert v. Toepfer, 550 So.2d 183 (La.1989); Smith v. Travelers Ins. Co., 430 So.2d 55 (La.1983).
A driver has a duty to drive defensively from the time the driver witnesses negligent operation of another vehicle or notices other hazards posing the potential for resulting damage. Miller v. Coastal Corp., 93-1073, 93-1074 (La.App. 3rd Cir. 4/6/94); 635 So.2d 607. That duty may include the duty to slow down or otherwise avoid risks posed by a vehicle ahead. Hebert v. Lefty's Moving Service, 389 So.2d 855 (La.App. 4th Cir.1980). While most cases imposing such a duty on the host driver in favor of his passenger involve situations where the host driver perceives and fails to avoid a roadway hazard or a hazard posed by the erratic operation of another vehicle, we see no reason to impose a lesser duty on a driver who has reason to recognize the even greater potential hazard posed by an armed passenger in another vehicle who has the gunbarrel of a shotgun pointed in the direction of the host's vehicle and its occupants. Moreover, we have held that the host driver's duty to avoid placing the occupants of his vehicle in a dangerous predicament is enhanced when the passenger's age or situation increases the odds against the passenger's escaping the peril encountered, as did Cynthia's exposed position atop the rear seat of the convertible. Carter, supra.
We conclude, as did the trial judge, that DeMoss breached a legal duty to his guest passenger when he operated his vehicle without *1012 due regard for Cynthia's safety and thereby exposed her to potential gunplay. The risk of his passenger being injured by the shotgun pointed at his vehicle was clearly within the scope of the duty DeMoss owed his passengers.
Having determined that DeMoss' conduct was a legal cause of Cynthia's injuries, we must next determine whether that conduct was a "use" of the automobile. We conclude that it was. In order for conduct to constitute "use" of an automobile, that conduct must be essential to the defendant's liability and the specific duty breached by the insured must flow from use of the automobile. Picou v. Ferrara, 412 So.2d 1297 (La.1982); LeJeune v. Allstate Ins. Co., 365 So.2d 471 (La.1978). Both criteria are met in this case. The duty of Shane DeMoss to Cynthia Edwards arose because of their relationship visa-vis the motor vehicle and flowed from the use of the automobile. That duty was breached by DeMoss' failure to operate his vehicle in a prudent manner under the prevailing circumstances. The only conduct of DeMoss for which he was held liable by the trial court was the use of the vehicle so as to put Cynthia in harm's way. He could have avoided placing her in a danger zone by the operation of his vehicle in a prudent manner under the prevailing circumstances, i.e., stopping, slowing, or taking an alternate route to avoid the gunman in the vehicle ahead. Instead, he pursued the truck even after having been driven off the road. Thus, the "use" of the automobile was essential to the finding of liability on the part of DeMoss.
In Carter, supra, we faced a similar coverage issue. There, the insured driver exposed his guest passenger to a dangerous situation by ignoring and driving around prohibitive barricades into floodwaters that had collected in a highway underpass. We held that the driver had breached a duty to his guest passenger by failing to operate his vehicle prudently in view of the potential hazards then existing. Since the legal cause of the passenger's injury was the negligent operation of the vehicle, we concluded that the driver's conduct clearly constituted the "use" of the automobile. We reach the same conclusion in this case.
Plaintiffs suggest that our decisions in LeJeune v. Allstate Ins. Co., supra, and Kessler v. Amica Mut. Ins. Co., supra, dictate a different result. They argue that here, as in those cases, DeMoss breached an independent duty to Cynthia Edwards which did not depend on the use of a vehicle. We do not agree.
In LeJeune, we faced the issue of whether a vehicular collision caused by the failure of a deputy sheriff to secure an intersection for the passage of a funeral cortege arose out of the "use" of the deputy's automobile within the meaning of a coverage exclusion in a professional liability policy. We held that the breach which resulted in the collision was a breach of the deputy's independent law enforcement duties. The duty breached was not imposed by virtue of his operation of a vehicle; it was imposed by his departmental orders to escort the cortege safely. The fact that he was driving a vehicle at the front of the funeral cortege was purely incidental to the plaintiff's injuries. Accordingly, we held that the conduct complained of did not arise out of the "use" of his vehicle and coverage under the policy was not excluded.
In this case, unlike LeJeune, DeMoss had no independent duty to the plaintiff other than his duty as host driver of the vehicle. The specific duty breached arose out of the circumstance that he was using a vehicle and the breach itself was accomplished through the negligent operation of the vehicle. The breach did not simply occur coincidentally "while" DeMoss was using his vehicle; it occurred "by virtue of" his negligent use of the vehicle.
Nor is this case similar to Kessler. In Kessler, supra, plaintiff was the driver of his own vehicle. He was injured when the driver of another vehicle shot him. The issue was the duty of the gunman in the other vehicle and whether his breach of that duty constituted "use" of the gunman's vehicle. We held that the duty of the gunman not to shoot another person was independent of the operation of a vehicle. The fact that the gunman was in a vehicle at the time of the shooting was incidental to the conduct for which he was held liable; the automobile was merely the situs of the tort. Here, the DeMoss vehicle was not merely the situs of the *1013 breach of an independent duty. It was the operation of the vehicle that gave rise to the duty owed in this case and it was the negligent operation of the vehicle which resulted in the breach of that duty. Thus, our determination that the conduct of the gunman in Kessler did not constitute "use" of an automobile is in no way contrary to our holding in this case.
Having concluded that the conduct of DeMoss was a legal cause of Cynthia's injuries and constituted "use" of a vehicle, we find that the liability of DeMoss for Cynthia's injuries was not covered by the homeowner's policy issued by Blue Ridge Insurance Company. Accordingly, we must reverse.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed insofar as it affirmed the judgment of the district court against Blue Ridge Insurance Company and assessed appellate costs against Blue Ridge Insurance Company. Otherwise, the judgment is affirmed. Plaintiffs' claims against Blue Ridge Insurance Company are dismissed. All costs are assessed against plaintiffs.
JOHNSON, J., dissents.
NOTES
[*] Victory, J. not on panel. Rule IV, Part 2, § 3.
[1] Cynthia's father, James H. Edwards, also filed suit on her behalf in connection with the same incident. Shortly thereafter, Cynthia reached the age of majority and the suits were consolidated before answers were filed.
[2] The trial judge granted a motion for summary judgment in favor of State Farm, holding that Cynthia Edwards' injuries did not arise out of the "use" of an automobile as required by the uninsured/underinsured motorist coverage clause. The court of appeal affirmed. Edwards v. Horstman, 604 So.2d 1055 (La.App. 2d Cir.1992). Plaintiffs did not seek relief from this court. Accordingly, the judgment dismissing State Farm is final and definitive; the correctness of that judgment is not before us for review.
[3] Judgment was rendered against Blue Ridge only. Shane DeMoss was a minor at the time of the accident and his parents had been discharged in bankruptcy from any liabilities they might have in connection with the accident. With the agreement of the parties, Shane DeMoss and his parents were dismissed from the proceedings.
[4] Edwards v. Horstman, 27,776, 27,777 (La. App.2d Cir. 4/3/96); 672 So.2d 222. The court of appeal held that its earlier affirmance of the summary judgment in favor of State Farm in Edwards v. Horstman, 604 So.2d 1055 (La.App. 2d Cir.1992) was controlling as the law-of-the-case on the issue of whether Cynthia Edwards' injuries arose out of the "use" of the vehicle DeMoss was driving.
[5] Edwards v. Horstman, 96-1403 (La.10/4/96); 679 So.2d 1362.
[6] Plaintiffs suggest that we are precluded from reviewing the coverage issue by the law-of-the-case doctrine. In Pitre v. Louisiana Tech University, 95-1466, 95-1487 (La.5/10/96); 673 So.2d 585, we held that the law-of-the-case principle is not applied to prevent a higher court from examining the correctness of the ruling of an intermediate court. Accordingly, we are not precluded by the law-of-the-case doctrine from exercising our jurisdiction to review the court of appeals' affirmance of the trial court judgment. That is true whether or not the court of appeals was correct in holding that it was itself bound under these circumstances by the law-of-the-case-doctrine, an issue upon which we express no opinion.
[7] In Carter, we dealt with "use" clauses in the coverage parts of two separate automobile liability policies. We used a similar analysis is determining the applicability of a "use" clause excluding coverage in a professional liability policy in LeJeune v. Allstate Ins. Co., 365 So.2d 471 (La. 1978). See also, Picou v. Ferrara, 412 So.2d 1297 (La.1982) and McKenzie, Automobile Liability Insurance-Use, 44 La. L.Rev. 365 (1983).