713 So.2d 770 (1998)
Pauletta GEDWARD, Individually and as Tutrix of her minor child, Kodi Sonnier, Plaintiff-Appellant,
v.
Ronnie SONNIER, Acceptance Insurance Company, Glenn Jolivette and Bobby Sonnier, Defendants-Appellees.
No. 97-1068.
Court of Appeal of Louisiana, Third Circuit.
May 20, 1998.
*771 Anthony F. Whitford, Lafayette, Chris Villemarette, Alexandria, Craig A. Davis, Lafayette, for Pauletta Gedward, et al.
Edwin Gustav Preis, Jr., Lafayette, Earl F. Sundmaker, New Orleans, for Ronnie Sonnier, et al.
Glenn Jolivette, pro se.
Robert Murray Mahony, Lafayette, for Acceptance Insurance Co.
Archie Paul Joseph, Breaux Bridge, for Bobby Sonnier.
Before THIBODEAUX, COOKS, SAUNDERS, GREMILLION and PICKETT, JJ.
THIBODEAUX, Judge.
Pauletta Gedward seeks review of the trial court's grant of summary judgment in favor of Acceptance Insurance Company (AIC). Gedward's minor son, Kodi Sonnier, was injured when he was thrown from a four-wheeled, all-terrain vehicle (ATV) while riding it on the property of his father, Ronnie Sonnier. Gedward sued individually and as tutrix of her minor son, for damages sustained as a result of the accident. The named defendants which are relevant to this appeal are Ronnie Sonnier and AIC, the homeowner insurer. Sonnier and AIC subsequently filed separate Motions for Summary Judgment on the issue of coverage for Gedward's claims. AIC's motion was granted, thereby dismissing all claims against it, and Gedward appealed.
We find that the trial court erred in granting AIC's Motion for Summary Judgment because AIC failed to establish the absence of factual support for one or more elements essential to Gedward's claim against it. Therefore, we reverse and, as a matter of law, find that the liability and medical provisions of the policy apply.

I.

ISSUES
We must decide:
1. whether the trial court erred in finding that Kodi Sonnier was injured on a motor vehicle and was therefore excluded from liability coverage pursuant to the policy's motor vehicle exclusion; and,
2. whether the trial court erred in finding that Kodi was a resident of his father's home on the date of the accident and, therefore, excluded from medical payments coverage.

II.

FACTS
Ten-year old Kodi Sonnier suffered severe head injuries as a result of being thrown from a four-wheeled, ATV on June 3, 1995. On the date of the accident, Kodi and two of his siblings were spending the weekend with their father, Ronnie Sonnier, at his home. Sonnier shared joint custody of the children with Pauletta Gedward, and was exercising his weekend visitation pursuant to the custody agreement in effect at the time. He was to return them to their mother and domiciliary parent, Gedward, on Sunday, June 4, 1995.
On the day of the accident, Glenn Jolivette, Sonnier's adult, half-brother, arrived at the house driving the ATV. The ATV did not belong to Jolivette or Sonnier, but instead belonged to their brother, Bobby Sonnier. Bobby Sonnier had taken the ATV to a friend to have maintenance work done, and was working offshore on the weekend of the accident. Jolivette took the ATV from this *772 friend's house without his brother's permission.
Sonnier and the children were inside of the house watching TV when Jolivette arrived, but ventured outside upon hearing the ATV pull into the yard. Jolivette had been there the day before with the ATV and had given the children rides on it. Sonnier never rode the ATV and did not know how to operate it.
Apparently, shortly after arriving, Jolivette realized that it was getting late and that he needed to return home so that he could prepare for church. He lived two or three miles away and asked Sonnier to give him a ride home. He said that he was leaving the ATV there, and told Sonnier that he could give his children rides on it later if he wanted to, while quickly pointing out how to start the vehicle and place it in motion. Sonnier testified in his deposition that his response was, "Okay, I'm going to go in the house and get my keys."
Approximately five minutes later, while Sonnier was still inside looking for his keys, he heard that the ATV was "really geared or revved up." He looked out of the window and saw Kodi riding it alone on the back of his property. Sonnier knew that Kodi did not know how to drive or handle the ATV, especially at the speed he was going, so he ran outside to stop him. However, when he made it to the scene, he found Kodi lying on the ground. He picked him up, noticed that he had a laceration on his head that was bleeding, and ran to a neighbor's house and waited underneath the carport for the ambulance that had been called.
Kodi lapsed into a coma in the ambulance as he was being taken to Lafayette General Hospital. It was discovered that Kodi was leaking brain fluid and had a fractured skull. The fracture resulted in bone emerging into Kodi's head, causing his brain to swell, and he was not given a good prognosis for survival. Fortunately, he underwent a successful operation and began awakening from the coma on Monday night. Kodi remained in the hospital for five weeks and underwent extensive physical therapy. As a result of the accident, his left hand and leg have remained very weak, and he has a permanent, large scar on the back of his head.
Gedward filed suit, naming Sonnier, Jolivette, Bobby Sonnier, and AIC as defendants. She alleged that Sonnier was "at fault for failing to supervise his minor child, Kodi, while Kodi was on his premises," thus permitting Kodi unrestricted access to the ATV. She also alleged that AIC was liable in solido with the other defendants "by virtue of the terms of the policy of liability insurance it issued to Ronnie Sonnier covering his premises located at 229 Mr. Cliff Road in Lafayette."
AIC filed its Motion for Summary Judgment on June 5, 1997 and a hearing was held on July 7, 1997. The trial court granted summary judgment dismissing AIC from the suit. The court gave oral reasons for its decision, stating that it found Kodi Sonnier to have been a resident of his father's dwelling on the date of the accident, and that the ATV qualified as a "motor vehicle" under the terms of AIC's policy and, therefore, the policy did not provide coverage. Gedward perfected this appeal.

III.

LAW AND DISCUSSION
Gedward argues that the liability exclusions of the policy relied upon by the trial court to deny coverage and to grant the summary judgment in favor of AIC were not applicable. The provision relied upon states:
SECTION II EXCLUSIONS
A. COVERAGE EPERSONAL LIABILITY AND
B. COVERAGE FMEDICAL PAYMENTS TO OTHERS
1. Coverage does not apply to bodily injury or property damage:
....
e. arising out of the ownership, maintenance, use loading, or unloading of;
....
(2) a motor vehicle owned or operated by, or rented or loaned to YOU.
Further, the policy provides this definition of "motor vehicle" upon which the court relied to grant the summary judgment:
E. "motor vehicle" means:

*773 ....
3. a motorized golf cart, snowmobile or other motorized land vehicle owned by an insured. It must be designed for recreational use off public roads and off an insured location. A motorized golf cart while used for golfing purposes is not a motor vehicle;
(Emphasis added).
Gedward asserts that: (1) the duty of Sonnier to properly supervise his minor child arose independently of any ownership, maintenance, or use of the fourwheeled ATV; (2) the ATV did not qualify as a "motor vehicle" under the exclusionary language of the policy because it was not "owned" by the insured and was not designed for use off an insured location; and, (3) alternatively, there exists a genuine issue of material fact as to whether the ATV was, in fact, loaned to Sonnier and consequently whether it was subject to the liability exclusion. Finally, Gedward asserts that the trial court incorrectly found that Kodi was a resident of his father's home, and therefore not eligible to receive medical payments coverage.
AIC disagrees and contends that the trial court correctly granted summary judgment in its favor based on the exclusions in the homeowner's policy issued to Sonnier. AIC argues that the alleged duty of Ronnie Sonnier to supervise Kodi arose from the use of the ATV which was loaned to Sonnier by Jolivette before the accident occurred. Further, it contends that the ATV is, in fact, a motor vehicle according to the definition provided in the policy and, therefore, the motor vehicle use exclusion of the policy precludes coverage for liability.
In addition, it asserts that there was no genuine issue of material fact that Kodi was a resident of his father's home on the date of the accident and, therefore, the medical payments provision of the policy does not provide coverage for him. The applicable provision states:

SECTION II LIABILITY COVERAGES

B. COVERAGE FPERSONAL MEDICAL PAYMENTS
We will pay ... for the necessary medical expenses incurred or medically determined within one year from the date of an accident causing bodily injury.... This coverage does not apply to YOU or a resident of YOUR dwelling.
(Emphasis added).
Appellate courts undertake a de novo review of motions for summary judgment. Potter v. First Fed. Savings & Loan Ass'n, 615 So.2d 318 (La.1993). In this case, while applying the requisite standard, we must keep in mind the mandates of La.Code Civ.P. art. 966(C)(2), which requires the granting of summary judgment if a movant, who does not bear the burden of proof at trial on the matter that is the subject of the motion, shows the absence of factual support for one or more of the elements essential to the adverse party's claim, action or defense, and the opposing party fails thereafter, to produce factual support that will establish his ability to satisfy his evidentiary burden at trial. See also Hayes v. Autin, 96-287 (La. App. 3 Cir. 12/26/96); 685 So.2d 691, writ denied, 97-0281 (La.3/14/97); 690 So.2d 41.

Liability Coverage
First, we will address Gedward's contention that the summary judgment was improperly granted to AIC because Sonnier's failure to properly supervise Kodi arose independently of any ownership, maintenance, or use of the ATV. Gedward asserts as support for her theory, Frazier v. State Farm Mut. Auto. Ins. Co., 347 So.2d 1275 (La.App. 1 Cir.), writ denied, 351 So.2d 165 (La.1977); LeJeune v. Allstate Ins. Co., 365 So.2d 471 (La.1978); and Smith v. USAA Cas. Ins. Co., 532 So.2d 1171 (La.App. 4 Cir.1988).
In Frazier, 347 So.2d 1275, the defendant's car was being driven by her daughter when the vehicle struck and injured a small child who had been left in the defendant's care. The first circuit held that although the defendant's homeowner's policy contained an exclusion for the operation of a motor vehicle, the cause of action against the defendant was the improper supervision by the defendant of the child who was entrusted to her care. Id. Thus, coverage was applicable because the cause-in-fact negligence was in the failure to *774 supervise the child and not in the operation of the vehicle. Id.
In LeJeune, 365 So.2d 471, the plaintiff sought to recover for the wrongful death of the decedent who was killed at an intersection while riding as a passenger in a hearse in a funeral procession that was being led by a deputy sheriff. Despite a flashing red light, the driver of the hearse continued through the intersection without stopping and was hit by a speeding driver on the favored highway. The deputy sheriff had failed to secure the intersection so that the vehicles in the procession could proceed through it without stopping, despite the flashing red light. The supreme court held that the department's general professional liability policy provided coverage for a deputy sheriff's negligent acts, unless the officer's negligence was precluded by the automobile use exclusion which denied coverage for "bodily injury arising out of the ownership, operation, or use, loading or unloading, of land motor vehicles." Id. The court held that the exclusion was inapplicable:
An exclusion clause in a liability policy is strictly construed against the insurer and in favor of coverage, if more than one interpretation is possible. Consonant with this principle, the decisions we could find hold that, where the automobile use exclusion clause is sought to be applied so as to avoid coverage for injuries otherwise covered by a general liability policy, the exclusion clause does not apply where the insured's act is a result of negligence independent of, even though concurring with, his use of an automobile.
Id. at 479 (citations omitted).
This issue was addressed again in Smith, 532 So.2d 1171. Minors were injured on two Honda four-wheel vehicles owned by the defendants, when they collided while riding on the defendants' property. The plaintiffs sued the defendants for negligent supervision of the minors. Our fourth circuit brethren relied upon Frazier and LeJeune and held that the homeowner's policy did provide liability coverage, despite its motor vehicle use exclusion, because the asserted negligence or cause-in-fact of the injuries, was the defendants' failure to supervise the minors who were operating the vehicles and not the negligent operation of the vehicles. Id.
AIC, however, asks this court to consider Mahlum v. Baker, 52,876 (La.App. 2 Cir. 6/24/94); 639 So.2d 820. The defendant in this wrongful death action reconvened against the plaintiffs, and asserted that they were independently negligent in the death of their child, for failing to properly supervise him while he operated a trail bike he was riding when he was struck by the defendant's vehicle. At issue was whether the plaintiffs' mobile home insurance policy precluded coverage because of its exclusion for motor vehicle operation or use of motor vehicles while away from the premises or ways immediately adjoining the premises. After finding that the plaintiffs did in fact breach their duty to supervise their child, the court addressed the issue of whether the operation or use of the motor vehicle was essential to the breach of that specific duty. To answer this question, the court employed the "common sense" approach suggested by Messrs. McKenzie and Johnson in their treatise on insurance law. See William Shelby McKenzie & H. Alston Johnson, III, 15 Louisiana Civil Law Treatise, Insurance Law and Practice § 72, at 186 (1986). The second circuit stated:
Under this approach, most accidents resulting from the movement of a vehicle by an underaged child, either intentionally or accidentally, should be classified as arising out of "use" of the vehicle. Furthermore, any breach by the child's parents to prevent or supervise such a "use," will also be deemed to have arisen therefrom. However, this general rule should not be without exception. Each decision regarding whether the "use" of the automobile is an essential ingredient of the duty breached by the parents should be tempered by "common sense."
Mahlum, 639 So.2d at 825 (citations omitted).
The fourth circuit's Smith decision, 532 So.2d 1171, was specifically rejected. Instead, the Mahlum court held that the injured child was operating or using the trail bike when the accident occurred and the plaintiffs' alleged negligence was firmly grounded in the supervision of their child's *775 use or operation of the bike. Mahlum, 639 So.2d 820. The court further stated, "To find otherwise ... would effectively create an automobile insurance contract out of a mobile home insurance policy that was designed and intended to cover liability resulting from incidents occurring on the insureds' premises." Id. at 827.
We do not agree with the second circuit's reasoning on this issue. We follow the reasoning espoused by our supreme court and the first and fourth circuits on this issue of whether an insured's failure to supervise arose independently of the maintenance, use or operation of a vehicle, for purposes of determining the applicability of an automobile use exclusion. We did, however, give consideration to the "common sense" approach employed in Mahlum, 639 So.2d 820, but found it more reasonable to conclude that the circumstance of Kodi being injured while using the ATV was incidental to Sonnier's alleged breach of duty. Our common sense tells us that the damages to Kodi arose out of Sonnier's alleged breach of his duty to supervise his child, and the "use" of the ATV was not essential to the breach of that duty.
Further, we find that the summary judgment was also erroneously granted because the provisions relied upon to deny liability coverage are ambiguous. Exclusion clauses in liability policies are to be strictly construed against the insurer and in favor of coverage if more than one reasonable interpretation is possible. LeJeune, 365 So.2d 471. As stated above, AIC's policy excludes coverage for injuries arising out of the use of a "motor vehicle owned or operated by, or rented or loaned to [an insured]." However, the policy defines motor vehicle as "a motorized golf cart, snowmobile or other motorized land vehicle owned by an insured. It must be designed for recreational use off public roads and off an insured location."
The defendant, AIC, argues that the language is not ambiguous in that the exclusion relied upon to deny coverage expressly provides that the motor vehicle can be either "owned OR operated by OR rented OR loaned to" [the insured]; in essence, it argues that the exclusion specifically redefines and broadens the term "motor vehicle." Nevertheless, we believe that it would be reasonable for an insured to conclude that the appropriate definition of motor vehicle is that which is specifically provided in the policy's section entitled "Definitions," which describes "motor vehicle," in relevant part, only as that which is owned by an insured. As a result, we find that the language in the two sections of the policy results in an ambiguity and, therefore, the language must be interpreted in favor of coverage. See Garcia v. St. Bernard Parish Sch. Bd., 576 So.2d 975 (La.1991); La.Civ.Code art.2056. Consequently, we need not reach the issue of whether the ATV was "loaned" to Sonnier on the date of the accident.

Medical Payments Coverage
The second issue presented for review is whether the trial court erred in finding that the policy precluded medical payments coverage based upon the residency status of Kodi. Under Section IILiability Coverages, Coverage FPersonal Medical Payments, the policy provides for the payment of necessary medical expenses incurred or medically determined within one year of the date of the accident causing bodily injury. However, "[t]his coverage does not apply to [an insured] or a resident of [an insured's] dwelling other than residence employees." AIC asserts that the trial court correctly denied this coverage to Kodi because at the time of the accident he was a resident of his father's dwelling.
Whether a person is a resident of a household is a mixed question of law and fact that is determined on a case-by-case basis. Bond v. Commercial Union Assurance Co., 407 So.2d 401 (La.1981); Prudhomme v. Imperial Fire & Cas. Ins. Co., 95-1502 (La.App. 3 Cir.); 671 So.2d 1116, writ granted in part, denied in part, 96-1030 (La.6/7/96); 674 So.2d 987; Chapman v. Poirrier, 96-977 (La. App. 3 Cir.); 689 So.2d 623, writ denied, 97-1164 (La.6/20/97); 695 So.2d 1358. Although there is no single manner of interpretation that applies to determining who is in fact a resident of a household for purposes of insurance coverage, our supreme court articulated a formula that focuses inquiry upon the existence of membership in a group, *776 rather than attachment to a building, and intent to remain and choice, rather than location. Bearden v. Rucker, 437 So.2d 1116 (La.1983). The facts, circumstances, and distinctions of each case is of considerable importance in making this inquiry. Hidalgo v. Boudreaux, 69-1607 (La.App. 3 Cir. 4/16/97); 693 So.2d 216.
This case involves a determination of the residency of a child of a divorced couple who share joint custody. Medical payments coverage turns on whether Kodi is a resident of his father's home, although his mother is the domiciliary parent. It is an elementary principle that a person may have many residences but only one domicile. Taylor v. State Farm Mut. Auto. Ins. Co., 248 La. 246, 178 So.2d 238 (1965). In addition, it is also well-settled that residency does not have a minimal time requirement. In re Booty, 95-828 (La.App. 1 Cir. 11/9/95); 665 So.2d 444. Residence is formally defined as the "[p]lace where one actually lives or has his home; a person's dwelling place or place of habitation; an abode with no present intention of definite and early removal and with purpose to remain for an undetermined period, not infrequently, but not necessarily combined with design to stay permanently." Black's Law Dictionary 907 (6th ed.1991). Moreover, it is important to consider:
Generally, the construction or signification of the term is governed by the connection in which it is used, and depends on the context, the subject matter, and the object, purpose, or result designed to be accomplished by its use, and its meaning is to be determined from the facts and circumstances taken together in each particular case.
Bearden, 437 So.2d at 1120, quoting Mathis v. Employers' Fire Ins. Co., 399 So.2d 273 (Ala.1981).
In Mobley v. State Farm Mut. Auto. Ins. Co., 28,357 (La.App. 2 Cir.); 674 So.2d 1117, writ denied, 96-1402 (La.9/20/96); 679 So.2d 433, that court was faced with the issue of determining who a minor child "lived with" in order to determine whether the insurance policy at issue provided coverage for her. The court stated:
We find that some of the factor's that determine whether a child lives with the named insured include, but are not limited to (1) where the child spends his time when not employed or at school; (2) where the child keeps his or her clothing or other personal belongings; (3) where the child receives his or her mail, including official notices and mail from friends; and (4) whether the child has a bedroom in the parent's house. Of course these factors are not exclusive, nor is any one factor more determinative than another. Consideration should also be given to the fact that a child may "live with" each separated or divorced parent under a joint custody plan.
Id. at 1121.
Although the court in Mobley distinguished between making a determination of whether a child "lives with" a parent and "resides" with a parent, it did note the similarities between the two concepts, and held that Bearden, 437 So.2d 1116, although not controlling, was still persuasive. We too, find that the terms, in this context, are similarly situated, and believe the factors espoused in Mobley are useful to our determination.
It is clear from the record that when Kodi is not at school, he spends the majority of his time with his mother. His clothing and other personal belongings are kept at his mother's home. His mother's home is also where he receives any mail or official notices and is also the place where he has his own bedroom. Sonnier, Gedward and Kodi agree that Kodi resides with his mother, which is also evidenced by the fact that Kodi did not have a personal bedroom at his father's home, nor did he keep personal belongings there. In addition, it was never mutually intended by Kodi's parents that he would remain at his father's home for any extended period of time.
Although these factors and the principles listed above assist in clarifying this nebulous term, in this case it is also necessary to consider the residence of the parents because a child's residence is irrevocably tied to the intention or residency of the parents. See In re Booty, 665 So.2d 444. Kodi's parents *777 shared joint custody; nevertheless, we find the "state of mind" or intention of the parents regarding Kodi's residence, as well as the findings stated above, to be persuasive. Accordingly, we conclude that Kodi was not a "resident" of Sonnier's household on the date of the accident and, therefore, he is not precluded from receiving medical payments coverage by the policy exclusion.

IV.

CONCLUSION
The trial court incorrectly granted the Motion for Summary Judgment on behalf of AIC. The defendant, AIC, did not establish that Gedward would be unable to establish an element of its claim against it and that it was entitled to judgment as a matter of law. Rather, the motor vehicle use exclusion relied upon failed to limit liability coverage because the cause of action arose out of the insured's failure to supervise his minor son, and not out of the "use" of the ATV. In addition, the term "motor vehicle" was ambiguous requiring that the ambiguity be resolved in favor of coverage. Further, medical payments coverage was incorrectly denied based on a finding that Kodi was a resident of the insured's household on the date of the accident. It is well-settled that a determination of the ambiguous term "residence" is a mixed question of law and fact that is to be decided on a case-by-case basis pursuant to a fact-intensive evaluation of the circumstances. Bearden, 437 So.2d 1116. Consequently, our de novo review of the record led us to conclude that Kodi was not a resident of his father's household on the date of the accident and, therefore, was eligible for medical payments coverage.
Accordingly, we reverse the judgment of the trial court. The costs of this appeal are assessed to defendant-appellee, Acceptance Insurance Company.
REVERSED AND RENDERED.
GREMILLION, J., dissents and assigns written reasons.
GREMILLION, Judge, dissenting.
The majority holds that the damages sustained by Kodi arose out of Sonnier's alleged breach of his duty to supervise him and that the use of the ATV was not essential to the breach of that duty. I respectfully disagree. In Carter v. City Parish Government of East Baton Rouge, 423 So.2d 1080 (La.1982), and reiterated in Kessler v. Amica Mutual Insurance Co., 573 So.2d 476 (La.1991) and Edwards v. Horstman, 96-1403 (La.2/25/97); 687 So.2d 1007, the Louisiana Supreme Court established the analysis to be used to determine whether an "arising out of the use" provision of the exclusions portion of an insurance policy has been satisfied. Because the exclusion provision in the AIC policy is designed to exclude coverage for liability resulting from conduct of an insured that constitutes both a legal cause of the injury and a use of the vehicle, appellate courts are directed by the supreme court to answer two separate questions:
1. Was the conduct of the insured of which the plaintiff complains a legal cause of the injury?
2. Did the harm arise out of the "use" of the ATV?
Carter, 423 So.2d 1080; Kessler, 573 So.2d 476; Edwards, 687 So.2d 1007.
Under the Carter/Kessler/Edwards analysis, in order to determine whether the conduct complained of was a legal cause of Kodi's injury, it is first necessary to determine whether Sonnier's conduct was a cause-in-fact of the injury. An action is a cause-in-fact of injury if it is a "substantial factor" in bringing about the harm to the plaintiff. Edwards, 687 So.2d 1007; Breithaupt v. Sellers, 390 So.2d 870 (La.1980); Vascocu v. Acme Cement Prods., Inc., 610 So.2d 258 (La.App. 3 Cir.1992), writ denied, 615 So.2d 341 (La. 1993). Clearly, if as alleged in the petition, Sonnier was negligent in failing to supervise his minor son by permitting him unrestricted access to the ATV, that fact would be a substantial factor in bringing about the harm and, therefore, a cause-in-fact of the accident.
Next, this court is required to ascertain whether the act was a breach of a legal duty imposed on Sonnier to protect against the risk involved. Kessler, 573 So.2d 476; LeBlanc *778 v. State, 419 So.2d 853 (La.1982). It is well settled that parents and other custodians have a duty to properly supervise a child to prevent injury to the child and others. Mahlum v. Baker, 25,876 (La.App. 2 Cir. 6/24/94); 639 So.2d 820; Ryals v. Home Ins. Co., 410 So.2d 827 (La.App. 3 Cir.) writ denied, 414 So.2d 375 (La.1982); Carter v. Salter, 351 So.2d 312 (La.App. 3 Cir.), writ denied, 352 So.2d 1045 (La.1977). Again, if the allegations are true, it can be said Sonnier breached his legal duty to properly supervise Kodi and prevent his unrestricted access to and use of the vehicle.
The next step in the Carter/Kessler/Edwards analysis is to determine whether the alleged harm arose out of the use of the ATV. I would conclude that it did. In order to constitute use of a vehicle, that conduct must be essential to the defendant's liability and the specific duty breached by the insured must flow from the use of the vehicle. Edwards, 687 So.2d 1007; Picou v. Ferrara, 412 So.2d 1297 (La.1982). As in Edwards, it is my opinion that both criteria are met in this case. The duty of Sonnier to Kodi arose because of their relationship vis-à-vis the ATV and flowed from the use of the vehicle. That duty was breached by Sonnier's alleged failure to properly supervise Kodi. The only conduct of Sonnier for which he could be held liable related directly to the use or operation of the vehicle.
Gedward based Sonnier's liability upon allegations of failure to properly supervise Kodi. As has been noted, Sonnier had a general duty in relation to those allegations. This duty is continuous in nature and exists independently of an instrumentality which may result in harm. As part of that general duty, Sonnier had a specific duty to protect Kodi from access to the ATV or the risks of harm that arise out of the use of the vehicle. It is this specific duty that is at issue in this case and not the general duty to supervise, protect, and provide for children. Mahlum, 639 So.2d 820.
Therefore, in relation to this allegation, the question presented is whether the operation or use of the ATV is essential to the alleged breach of the specific duty. To answer this question, it has been held and recognized by the majority that we must employ a common sense approach. Kessler, 573 So.2d 476; Mahlum, 639 So.2d 820. Under this approach, I would agree with our colleagues in the Second Circuit Court of Appeal in Mahlum that common sense shows that most accidents resulting from the movement of a vehicle by an underage child, either intentionally or accidentally, should be classified as arising out of the use of the vehicle. Further, I would agree that any breach by a child's parents to prevent or supervise such use will also be deemed to have arisen therefrom. Id.
I, therefore, respectfully suggest the majority should have followed the Carter/Kessler/Edwards analysis by approaching the "motor vehicle use" issue and legal cause question separately, thereby avoiding the traditional proximate cause concepts, and utilized a duty risk analysis to decide the legal cause question. In doing so, I would specifically reject and decline to follow Smith v. U.S.A.A. Casualty Insurance Co., 532 So.2d 1171 (La.App. 4 Cir.1988), which was relied on by the majority. Smith involved injuries to three minor plaintiffs who were injured after two four-wheeled vehicles collided. In Smith, the plaintiffs based defendants' liability upon negligent supervision of the minor children, and the defendants' homeowner insurer denied coverage based upon a "motor vehicle use" exclusion contained in the policy. The court concluded that the alleged failure to supervise arose independently from the operation of the four-wheeled vehicles and found that the negligence asserted against the defendants was covered by the policy.
McKenzie and Johnson, in their treatise on insurance law and practice, criticized Smith as follows:
In declaratory action by insureds against insurer, the court held that allegations in original tort suit that insureds were negligent in the supervision of children set forth a breach of duty independent of the use of the vehicles. Therefore, the insurer whose policy excluded liability arising out of the use of such recreational vehicles, was obligated to defend the insureds. The court's reliance on Frazier and LeJeune in reaching this conclusion was misplaced. *779 The child being supervised by the insureds in Frazier was not using the automobile. The child's only relationship to the auto was being struck by it. In Smith, the children were using the recreational vehicles and any breach of duty by the insured clearly arose solely out of their failure to supervise such use. Use of the vehicle was essential to the theory of liability. Likewise, the duty breached by the sheriff in LeJeune related to stopping traffic on an intersecting highway, not to the use of his police vehicle. Thus, the duty to protect the intersection existed independently of any duty with respect to the use of a police vehicle. In Smith, however, the only relevant duty allegedly breached by the insureds was their failure to supervise children who were actually using the vehicle. Such duty is analogous to the negligent entrustment discussed in Picou in which the Supreme Court found that the breach arose out of use because the vehicle was essential to the theory of liability.
William Shelby McKenzie & H. Alston Johnson, III, Insurance Law & Practice, § 72, page 207, fn. 2, 15 Louisiana Civil Law Treatise (1996).
In Picou, 412 So.2d 1297, defendant was on an errand for his employer when he struck plaintiff's motorcycle causing him injury. The employer's general liability insurer sought to enforce its policy exclusion of liability arising out of the use of an automobile by any person in the course and scope of his employment. The supreme court reversed both the trial court and court of appeal, finding that plaintiff's injury arose out of the use of the automobile notwithstanding the negligent entrustment theory of liability pressed by plaintiff. The court found "the use of the automobile, a risk excluded from the policy, is a common and essential element in each theory of liability." Picou, 412 So.2d at 1300 (emphasis added).
In Frazier v. State Farm Mutual Automobile Insurance Co., 347 So.2d 1275 (La.App. 1 Cir.), writ denied, 351 So.2d 165 (La.1977), the plaintiffs' minor child was injured after being run over by a vehicle driven by defendants' minor daughter. Defendants were babysitting the plaintiffs' child at the time of the accident, and plaintiffs sued not only defendants' automobile insurer, but their homeowner's insurer as well. One of the grounds alleged in plaintiffs' petition was defendants' failure to properly supervise the injured child while babysitting. The defendants' homeowner's insurer filed an exception of no cause of action alleging no coverage based upon the automobile use exclusion in their policy. The court held that the automobile use exclusion contained in the policy did not preclude coverage for defendants' liability arising from their failure to properly discharge their babysitting responsibility because those responsibilities did not arise out of the use of the automobile. Use of the automobile was not essential to plaintiffs' theory of liability. While the automobile was an essential fact of the accident, it was only incidental to the theory of liability under the homeowner's policy.
The accident in LeJeune v. Allstate Insurance Co., 365 So.2d 471 (La.1978), on remand, 373 So.2d 212 (La.App. 3 Cir.1979), occurred at a highway intersection controlled by flashing yellow and red lights when a vehicle on the favored highway crashed into a hearse leading a funeral procession as it traveled through the intersection. Ultimately, the deputy sheriff assigned to escort the procession was found negligent in failing to secure the intersection. The professional liability carrier for the deputy denied coverage based upon the automobile use exclusion in its policy. The Louisiana Supreme Court found that the exclusion did not apply because the deputy's act was a result of negligence independent of the use of an automobile, even though it was concurrent with the automobile's use. The court based its finding on the fact that the deputy's negligence was in failing to secure the intersection, not his negligent use of the vehicle, even if the deputy could have used the vehicle to secure the intersection. It was his failure to secure the intersection that resulted in the accident, not the use or nonuse of the vehicle. The deputy neglected his professional responsibility, to secure the intersection, which was covered by the professional liability policy. The use of the automobile was not essential to the plaintiffs' theory of their case.
*780 Picou is analogous to the case at hand while Frazier and LeJeune are distinctly different. Kodi was operating the ATV at the time the accident occurred. He was not a passive victim as was the minor child in Frazier. In the case at bar, the use of the ATV vehicle was its common use, while the use of the vehicle in LeJeune would have been for a barricade. Gedward's allegation of negligence is firmly grounded in the supervision of Kodi's use or operation of the ATV similar to the plaintiff's negligent entrustment theory of recovery in Picou. Further, the use of the ATV is common and essential to the theory supporting the alleged liability for improper supervision.
I would, therefore, conclude that use of the ATV, a risk excluded from the policy, is common and essential to Gedward's theory of liability, and that the liability of Sonnier for causing Kodi's injuries was excluded by the homeowner's policy issued by AIC.
Furthermore, I respectfully disagree with the majority's finding that the provisions relied upon to deny liability coverage are ambiguous. AIC's policy excludes coverage for injuries arising out of the use of a "motor vehicle owned or operated by, or rented or loaned to [an insured]." The majority finds this exclusion ambiguous because the policy defines motor vehicle as "a motorized golf cart, snowmobile or other motorized land vehicle owned by an insured. It must be designed for recreational use off public roads and off an insured location."
"Interpretation of a contract is the determination of the common intent of the parties." La.Civ.Code art.2045. "A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective." La.Civ.Code art.2049. In Hebert v. Hartford Insurance Co. of the Midwest, 94-316, p. 9 (La.App. 3 Cir. 11/2/94); 649 So.2d 631, 636, this court stated the following:
Absent conflict with statute or public policy, insurers may, by unambiguous and clearly noticeable provisions, limit liability and impose such reasonable conditions as they wish upon the obligations they assume by contract. Jones v. MFA Mutual Ins. Co., 410 So.2d 1190 (La.App. 3rd Cir. 1982). In order for policy language to be considered ambiguous, it must be susceptible of two or more equally reasonable interpretations. Sharff v. Ohio Casualty Ins. Co., 605 So.2d 657 (La.App. 2d Cir.), writ denied, 608 So.2d 196 (La.1992). An insurance policy should not be interpreted in an unreasonable or strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. LIGA v. Interstate Fire & Casualty Co., 93-0911 (La.1/14/94); 630 So.2d 759.
AIC's policy intends to not only exclude coverage for the motor vehicle that is owned by the insured, but also to one that is operated by, or rented or loaned to the insured. The terms are clear and unambiguous and impose reasonable conditions upon the obligations of the insurance agreement. Therefore, I would find that the exclusion is unambiguous.
Finally, I respectfully disagree with the majority's reversal of the trial court's finding that Kodi is not a resident of Sonnier's home for the purpose of finding medical coverage under his homeowner's policy. The concept of residency is different from that of domicile. A person, or a child, has only one domicile, but may have several residences. Taylor v. State Farm Mut. Auto. Ins. Co., 248 La. 246, 178 So.2d 238 (1965). The term residence is usually given a broader meaning than that of domicile. Matter of Booty, 95-828 (La.App. 1 Cir. 11/9/95); 665 So.2d 444. The residency of a child is irrevocably tied to the intention or residency of his parents. Id.
In this instance, Sonnier and Gedward have joint custody of Kodi pursuant to a Consent Judgment for Joint Custody, Child Support and Implementation Plan rendered on May 15, 1995. It was the intent of the parents under the Consent Judgment that the parents would exercise separate custodial privileges with Kodi. At the time of the accident, Sonnier was doing exactly that. Evidently, everybody involved in this matter intended for Kodi to go to Sonnier's home in order for Sonnier to exercise his custodial privileges with Kodi. It is, therefore, my *781 opinion that Kodi was a resident of both his mother's and father's home.
The controlling case on whether a person is a "resident of a household" is Bearden v. Rucker, 437 So.2d 1116 (La.1983). In that case, the supreme court stated that the determination of whether a spouse is a "resident of a household" is not "solely dependent upon whether the couple is living under the same roof." Rather, the emphasis is upon whether there remains "membership in a group rather than an attachment to a building;" and it is "a matter of intention and choice" rather than "one of location." Id. at 1121. In Mobley v. State Farm Mutual Automobile Insurance Co., 28,357 (La.App. 2 Cir. 5/8/96); 674 So.2d 1117, writ denied, 96-1402 (La.9/20/96); 679 So.2d 433, the case relied on by the majority, the language of the policy included the language "who lives with you." After considering Bearden, the court held that, although instructive, it was not controlling because the policy language at issue was different and unambiguous, as opposed to the language in Bearden. The court in Mobley went on to list factors which it found helpful in determining whether the child lived with the insured. These factors were listed and considered by the majority here in determining that Kodi was not a resident of Sonnier's home.
I disagree with the majority's reliance on Mobley and the use of the factors stated therein in determining that Kodi was not a resident of Sonnier's home. I feel that those factors seek more to establish an attachment between Kodi and the building where his mother lives, rather than a membership in a group, as instructed by Bearden. Further, those factors seem to indicate domicile rather than residence. It should also be noted that in Mobley after the court listed the factors used to determine whether a child lives with the named insured, it stated "[o]f course, these factors are not exclusive, nor is any one factor more determinative than another. Consideration should also be given to the fact that a child may live with each separated or divorced parent under a joint custody plan." Mobley, 28,357, p. 9; 674 So.2d at 1121 (emphasis added).
Although Kodi may spend more time at Gedward's home, there is no minimal time limitation for a finding of residency. Matter of Booty, 665 So.2d 444. All that is necessary is a place or premises which entitles him to return at his convenience without having to ask the permission of someone else. Hidalgo v. Boudreaux, 96-1607 (La.App. 3 Cir. 4/16/97); 693 So.2d 216. Since the residence of Kodi is irrevocably tied to that of his parents, and because he may have more than one residence, I would affirm the trial court's finding that he is a resident of Sonnier's home.